**GULF GUARANTY LIFE INSURANCE COMPANY, Plaintiff,**

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY and Cigna Reinsurance Company, Defendants.**

**Civil Action No. 3:96cv753BS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

April 8, 1997.

Robert M. Frey, W. Scott Welch, III, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Gulf Guar. Life Ins. Co.

Edwin York Hannan, Watkins & Eager, Jackson, MS, Harry P. Cohen, Rosenman & Colin, L.L.P., New York City, for Connecticut General Life Ins. Co., Cigna Reinsurance Co.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the Motion of Defendant Cigna Reinsurance Company (CRC) to Compel Arbitration and Stay the Action. Plaintiff Gulf Guaranty Life Insurance Company (Gulf Guaranty) has responded. Having considered the Motion, the Response, the attached exhibits and the applicable law, the Court finds that the Motion is well taken and should be granted.

### I. *Background*

Plaintiff Gulf Guaranty is a company engaged in the business of issuing certificates of credit life insurance. In 1981, Gulf Guaranty and Defendant Connecticut General Life Insurance Company (Connecticut General) entered into a contract whereby Connecticut General agreed to reinsure Gulf Guaranty on certain credit life insurance certificates Gulf Guaranty had issued. *See Reinsurance Agreement,* attached as Exhibit A to Complaint. Article 12 of that contract provides that

> Should a disagreement arise between the two companies regarding the rights and liabilities of either company under any transaction under this agreement, the same will be referred to arbitrators, one to be chosen by each company from among the officers of other life insurance companies and a third to be chosen by the said two arbitrators before entering upon arbitration. . . .

*Id.* at ¶ 12.

Gulf Guaranty had issued a credit life insurance certificate to Billy Dwayne Duett. After Duett accidentally drowned in July, 1991, Gulf Guaranty paid the claim submitted by a bank creditor of Duett. Duett's widow then sued Gulf Guaranty for the remaining proceeds under the insurance certificate and for punitive damages for failure to pay the additional amount. Following judgment in favor of Duett's widow, Gulf Guaranty sought reimbursement from Connecticut General under the reinsurance agreement not only for reinsurance percentage of the additional amount found to be due under the policy, but also for the punitive damages award and of the costs of defense. By letter dated July 19, 1996, CRC, apparently acting as an agent of Connecticut General, stated that it had

> enclosed a check in the amount of $10,-666.57, representing Connecticut General's 61.3% share of policy indemnity, as awarded by the court. Acceptance by Gulf Guar-

anty will constitute an agreement that Connecticut General's obligations under the reinsurance agreement with respect to this claim are fully and finally satisfied.

*Letter from Kenneth Lucas,* dated July 19, 1996, attached as Attachment C to Exhibit 1 to Motion to Compel.

CRC sent another letter dated July 31, 1996, to Gulf Guaranty explaining that "Connecticut General is willing to withdraw [its] reservation of rights if Gulf Guaranty accepts the payment … as a full and final satisfaction of Connecticut General's liability for the Duett claim." *Letter from Kenneth Lucas,* dated July 31, 1996, attached as Attachment C to Exhibit 1 to Motion to Compel.

On or about September 17, 1996, Gulf Guaranty sued Connecticut General and CRC in Mississippi state court. The Defendants removed the action to this Court on or about October 11, 1996. In its complaint, Gulf Guaranty alleges that it submitted a proper claim to CRC pursuant to the express terms of the reinsurance agreement and the course of dealings between the parties, but that CRC, acting as the authorized agent for Connecticut General, wrongfully refused to pay the claim. *Complaint* at ¶ 7. Specifically, Gulf Guaranty states that CRC, in a letter dated July 19, 1996, wrongfully conditioned partial payment of the claim on the unconditional release of Connecticut General and CRC by Gulf Guaranty of the remaining part of the claim. *Complaint* at ¶ 8. Gulf Guaranty lists as its causes of action a breach of contract action as well as an independent tort action for wrongfully placing conditions on payment. *Complaint* at ¶¶ 9–11.

In their Answer and Affirmative Defenses and Counterclaims, Connecticut General and CRC sought to compel arbitration pursuant to ¶ 12 of the Reinsurance Agreement. In its Response to Counterclaim, Gulf Guaranty admitted that its claims against Connecticut General were arbitrable. *Plaintiff's Response* at ¶ 4, attached as Exhibit 3 to Motion to Compel Arbitration. On or about January 10, 1997, United States Magistrate Judge James C. Sumner ordered all proceedings by Gulf Guaranty against Connecticut General stayed pending completion of arbi-

tration. *Order,* attached as Exhibit 4 to Motion to Compel.

Gulf Guaranty denies that its claims against CRC are subject to arbitration because CRC was not a party to the Reinsurance Agreement which contained the arbitration provision. *Plaintiff's Response* at ¶ 5, attached as Exhibit 3 to Motion to Compel Arbitration. CRC filed the present Motion seeking to compel arbitration of the claims by Gulf Guaranty against CRC despite the fact that CRC was not a party to the Reinsurance Agreement.

## II. *Analysis*

### A. *Enforcement of Arbitration Clause by a Non–Signatory*

The parties do not dispute that the power to compel arbitration and stay the trial proceedings pending completion of arbitration is within the jurisdiction of this Court. Federal Arbitration Act §§ 3 and 4, 9 U.S.C. §§ 3 and 4. Gulf Guaranty disputes, however, that a non-signatory, CRC, may enforce the arbitration agreement against a signatory.

Courts generally apply the doctrine of equitable estoppel to allow a non-signatory to enforce an arbitration clause against a signatory if (a) the non-signatory is alleged to be the agent of a signatory or (b) the claims against the non-signatory are "fundamentally grounded" in, "intimately founded in and intertwined with" "or 'arise out of and relate directly to' the agreement containing the arbitration clause." *See, e.g., Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 758 (11th Cir.1993), *cert. denied,* 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); *McBro Planning and Development Co. v. Triangle Elec. Construction Co., Inc.,* 741 F.2d 342, 344 (11th Cir.1984); *Hughes Masonry Co., Inc. v. Greater Clark County Bldg. Corp.,* 659 F.2d 836, 838 (7th Cir.1981).

■ Although the United States Court of Appeals for the Fifth Circuit has never expressly adopted the *Hughes Masonry* equitable estoppel doctrine, neither has it rejected it. The Court finds that the doctrine of equitable estoppel should apply in cases in which a non-signatory seeks to enforce an arbitration agreement against a signatory to that agreement where the non-signatory is

an agent of a signatory or where the claims against the non-signatory are "intimately founded in and intertwined with" the agreement containing the arbitration clause. *See Sunkist Soft Drinks*, 10 F.3d at 758.

B. *Application of the Hughes Masonry Doctrine*

■ Gulf Guaranty argues that the *Hughes Masonry* doctrine of equitable estoppel should not apply in the present case to compel arbitration between itself and CRC because its claim against CRC is not based on the reinsurance agreement containing the arbitration clause. Instead, Gulf Guaranty states, its claim against CRC is an independent tort action based on the conduct of CRC expressed in its letters dated July 16, 1996, and July 31, 1996, in response to the claim submitted by Gulf Guaranty.

The Court finds the argument of Gulf Guaranty unpersuasive. First, the *Hughes Masonry* doctrine allows a court to compel arbitration when the non-signatory is alleged to be the agent of a signatory to the arbitration .agreement. Gulf Guaranty has alleged that CRC is the authorized agent of Connecticut General, a signatory to the agreement containing the arbitration provision. *Complaint* at ¶ 7. Second, even if Gulf Guaranty had not alleged agency between Connecticut General and CRC, the Court finds that the claims against CRC are intimately founded in and intertwined with the contract containing the arbitration agreement.

Although Gulf Guaranty insists that it "does not seek to impose upon CRC the obligations that Connecticut General (and it alone) undertook when it entered into the Reinsurance Agreement," the Court finds that, in fact, the claims by Gulf Guaranty against CRC arise exclusively out of the reinsurance agreement. *Memorandum in Response to Motion to Compel* at p. 8.

Gulf Guaranty alleged in its complaint that the conditional tender by CRC was a "breach of the terms of the Agreement" and "constitute[s] an independent tort. . . ." *Complaint* at ¶ 11. Gulf Guaranty argues that its claim against CRC is not intertwined with the reinsurance agreement because "CRC committed a separate and independent tort when it com-

municated with Gulf Guaranty via the July 19, 1996, and July 31, 1996, letters." *Memorandum in Response to Motion to Compel* at p. 8. This argument is without merit because the tort claim brought by Gulf Guaranty simply states that the settlement offer CRC made in delivering the check should have been unconditional because the full amount was already due under the Reinsurance Agreement. The tort claim is not separate and independent because it necessarily rests on the validity of the contract claim. The *Hughes Masonry* court specifically denounced this tactic in stating that

[I]t would allow a party to defeat an otherwise valid arbitration clause simply by alleging that an agent of the party seeking arbitration has improperly performed certain duties under the contract and thereby committed a tort that is so integrally related to the subject of arbitration between the parties as to constitute a bar to such arbitration.

*Hughes Masonry*, 659 F.2d at 838–39.

Therefore, the Court finds that because the claims by Gulf Guaranty against CRC allege agency between CRC and Connecticut General, the non-signatory to the arbitration provision, CRC, should be allowed to enforce the arbitration provision. Further, the Court finds that the claims are so intimately bound and intertwined with the contract containing the arbitration provision that CRC should be allowed to enforce the arbitration agreement.

Section 3 of the Federal Arbitration Agreement, 9 U.S.C. § 3, authorizes the Court to "stay the trial of the action until . . . arbitration has been had in accordance with terms of the agreement. . . ." Accordingly, the Court finds that the action by Gulf Guaranty against CRC should be stayed pending arbitration pursuant to the reinsurance agreement.

IT IS THEREFORE ORDERED that the Motion of CRC to Compel and Stay Proceedings [20] is hereby granted.

IT IS FURTHER ORDERED that Plaintiff Gulf Guaranty is hereby ordered to enter into arbitration with Defendant CRC pursuant to the arbitration provision in the Rein-

surance Agreement between Gulf Guaranty and Connecticut General.

IT IS FURTHER ORDERED that this action is hereby stayed pending arbitration in accordance with the arbitration provision in the reinsurance Agreement.

IT IS FURTHER ORDERED that the attorneys for all parties make ii a status report to the Court within 10 days of the final order in the arbitration.