**Ralph RAESLY and Sonya Raesly, Plaintiffs,**

v.

**GRAND HOUSING, INC. and Bombardier Capital, Inc., Defendants.**

**No. CIV.A.4:00CV29LN.**

United States District Court, S.D. Mississippi, Eastern Division.

May 12, 2000.

Robert M. Logan, Jr., Jason Avery Mangum, Logan & May, Newton, MS, for Plaintiff.

Dorrance Aultman, Kelly Cash Lee, Aultman, Tyner, Ruffin & Yarborough, Ltd, Hattiesburg, MS, Lee N. Perry, Perry & Murr, Gulfport, MS, William H. Leech, Beth Orlansky, McGlinchey Stafford, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants Grand Housing, Inc. and Bombardier Capital, Inc. (Bombardier) to dismiss and compel arbitration.

Plaintiffs Ralph and Sonya Raesly have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, along with other pertinent authorities, concludes that defendants' motion should be granted in part and denied in part, as set forth herein.

Plaintiffs Ralph and Sonya Raesly filed this action in the Circuit Court of Lauderdale County, Mississippi against defendant Grand Housing, Inc. and Bombardier Capital, Inc., asserting claims for breach of implied and express warranties, including violation of the Magnuson–Moss Warranty–Trade Commission Improvement Act (Magnuson–Moss Warranty Act), 15 U.S.C. § 2301 *et seq.*, all arising from their purchase of a mobile home from Grand Housing. Defendants Grand Housing and Bombardier, assignee of plaintiffs' installment contract with Grand Housing, removed the case to this court based on the court's jurisdiction under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2310(d),[1] and have now moved to compel binding arbitration of plaintiffs' claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, based on an arbitration agreement executed by plaintiffs in connection with their purchase of the subject mobile home.[2]

In August or September 1998,[3] the Raeslys purchased a mobile home from defendant Grand Housing. Plaintiffs allege in this action that once the home was set up and they moved in, they discovered numerous defects.[4] They state that although they reported these defects to the seller, Grand Housing, this defendant has been unable or unwilling to correct the defects. Plaintiffs have thus sued in count 1 of their complaint for alleged breach of the implied warranties of merchantability and of "fitness of its use as a residence" and for breach of express warranties, for which they demand recovery of the purchase price, all loan payments, insurance costs and incidental and consequential costs, and attorneys' fees and litigation expenses for breach of warranty under the Magnuson–Moss Warranty Act.[5] In count 2 of the complaint, plaintiffs purport to state claims for "material misrepresentations, breach of contract and negligence" based on allegations that whereas Grand Housing's representative told them they could expect monthly utility bills of around $75 to $80, the actual bills have been substantially more, and based also on their averment that defendant's representative did not "hold" plaintiffs' check for a period of time as he had agreed and instead negotiated it prematurely, causing plaintiffs to incur overdraft charges, and to suffer embarrassment and inconvenience from bounced checks.

At the time of their purchase of the mobile home, plaintiffs signed three documents, a "Purchase Agreement," a "Manufactured Home Retail Installment Contract" and a document entitled simply

---

1. Under the Magnuson–Moss Warranty Act, a "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief... in any court of competent jurisdiction in any State or the District of Columbia; or ...in an appropriate district court of the United States ...." 15 U.S.C. § 2310(d).

2. Bombardier contends, and plaintiffs do not dispute, that as assignee of the installment contract, Bombardier has the same rights, including the same right to seek arbitration, as does Grand Housing.

3. Plaintiffs have taken conflicting positions as to when the transaction occurred. Inasmuch as the specific date of the transaction is not material for present purposes, the court will not dwell on this issue.

4. They allege that the home was unlevel, the roof leaked, the walls were buckling, and there were cracks in the walls, plumbing problems and air conditioning and heating defects.

5. They apparently also seek to recover damages for emotional distress and for physical injury caused by bites from insects that have invaded their home as a result of the alleged defects in the home.

"Arbitration," by the express terms of which they purportedly agreed to submit to binding arbitration "[a]ll disputes, claims or controversies arising from or relation [sic] to this Contract or the relationships which result from this Contract...."[6] In their present motion, defendants submit that plaintiffs, by virtue of having signed this agreement to arbitrate in connection with and as part of their contract for the purchase and financing of the subject mobile home, are required to submit their claims in this action to binding arbitration and are therefore foreclosed from proceeding with the instant litigation. Accordingly, defendants request that the court dismiss this action with prejudice, and compel plaintiffs to submit their claims to arbitration.

Congress provided in the Federal Arbitration Act (FAA) that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[7] The effect of this section is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 3 of the FAA provides for the stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration, 9 U.S.C. § 3; and section 4 provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, 9 U.S.C. § 4. Under § 4, then, "if a party to an agreement refuses to arbitrate, the opposing party may bring an action to compel arbitration, and after hearing the parties the court 'being satisfied that the making of the agreement for

---

**6.** The "Arbitration" document recites, *in toto*, as follows:

> **Arbitration:** All disputes, claims or controversies arising from or relation [sic] to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire contract, shall be resolved by binding arbitration by one arbitrator selected by the Assignee with consent of Buyer(s). This arbitration Contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. § 1. Judgment upon the award may be entered in any court having jurisdiction. The Parties agree and understand that they have a right or opportunity to litigate disputes through a court but they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN).** The parties agree and understand that all disputes arising under case law, and all other laws including, but not limited to, all contract, tort and property disputes, will be subject to binding arbitration in accord with this Contract. The parties agree and understand that the arbitrator shall have all powers provided by law and the Contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto to the contrary [sic], Assignee retains an option to use judicial or nonjudicial relief to enforce a security agreement relating the [sic] Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment, or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding *any other disputes or remedy* subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by assignee pursuant to this provision.

**7.** The parties agree that inasmuch as the mobile home in question was manufactured in Georgia, then transferred to Mississippi and sold to plaintiffs, the contract involved evidences a transaction involving interstate commerce and thereby falls under the purview of the FAA.

arbitration or the failure to comply there-with is not in issue,' shall direct the parties to arbitrate." If, on the other hand, "'the making of the arbitration agreement or the failure ... to perform the same be in issue, the court shall proceed summarily to the trial thereof.'" *Id.* (quoting § 4).

The Fifth Circuit has explained that,

> [i]n adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-step inquiry. The first step is to determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.... The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims."

*Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir.1996) (citations omitted).

When deciding the broader issue of whether the parties agreed to arbitrate the dispute in question, "the court must look to the body of federal arbitration law," *Bhatia*, 818 F.2d at 421, which recognizes that "the question of arbitrability [is to] be addressed with a 'healthy regard for the federal policy favoring arbitration,' with doubts regarding the scope of the agreement resolved in favor of arbitration," *id.* (quoting *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941).[8] As to the more specific issue of whether there is a valid agreement to arbitrate, "'courts generally ... should apply ordinary state-law principles that govern the formation of contracts'," *Webb*, 89 F.3d at 257 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)), but in doing so, must give "due regard ... to the federal policy favoring arbitration," *id.* (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr.*

*Univ.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 1253–54, 103 L.Ed.2d 488 (1989)).

"[I]in construing an arbitration agreement within the scope of the FAA, 'as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability'." *McKee v. Home Buyers Warranty Corp. II*, 45 F.3d 981, 984 (5th Cir.1995) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). At the same time, however, the court may grant relief to a party opposing arbitration where he presents "well supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract'," *Mitsubishi Motors*, 473 U.S. at 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (quoting 9 U.S.C. § 2); *see also Bhatia*, 818 F.2d at 421 (court should at all times "remain keenly attuned to well-grounded claims that 'the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds "for the revocation of any contract."'" (quoting 9 U.S.C. § 2)); *Rhode v. E & T Investments, Inc.*, 6 F.Supp.2d 1322, 1326 (M.D.Ala.1998) ("[Section] 2 'gives States ... method[s] for protecting consumers against unfair pressure to agree to a contract with an unwarranted arbitration provision' both in equity and under principles of contract law." (quoting *Allied–Bruce Terminix v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995))).

In the case at bar, plaintiffs do not deny that they signed the document setting forth the arbitration agreement upon which defendants rely. They submit, however, that they nevertheless are not bound to arbitrate their claims for a number of reasons, including (1) that the arbitration agreement was not included in their pur-

---

**8.** *See also Bhatia v. Johnston*, 818 F.2d 418, 421 (5th Cir.1987) ("The Arbitration Act clearly established a federal policy in favor of arbitration, and sought to ameliorate perceived judicial hostility to arbitration.").

chase agreement itself but was presented as a separate document and as such, is not part of their contract; (2) that the arbitration agreement is unconscionable and should not be enforced against plaintiffs; (3) that mutuality is lacking in that the defendants did not sign and are not similarly bound by the arbitration agreement; (4) that even if plaintiffs are bound by the agreement they signed, that agreement, when considered together with the installment contract and purchase agreement, creates no unambiguous agreement to arbitrate anything; and finally, (5) that the arbitration agreement does not extend to plaintiffs' breach of warranty claims. For the reasons that follow, the court concludes that each of plaintiffs' arguments lacks merit.

■ Plaintiffs first submit that the arbitration agreement is unenforceable as it is "clearly not a part of the main Contract or Purchase Agreement." In this regard, they note that in connection with their purchase and financing of the subject mobile home, they signed three separate documents, a Purchase Agreement, an Installment Contract and the arbitration document. The Purchase Agreement, they note, recites, *inter alia,* as follows:

THIS AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN YOU AND ME AND NO OTHER REPRESENTATION OR INDUCEMENT, VERBAL OR WRITTEN, HAS BEEN MADE WHICH IS NOT CONTAINED IN THIS CONTRACT. I, OR WE, ACKNOWLEDGE RECEIPT OF A COPY OF THIS ORDER AND THAT I, OR WE, HAVE READ AND UNDERSTOOD THE BACK OF THIS AGREEMENT.

And the back of the purchase agreement contains the following provision, which they contend is completely at odds with any putative arbitration agreement:

CONTROLLING LAW AND PLACE OF SUIT. The law of the State, in which I sign this contract, is the law which is to be used in interpreting the terms of the contract. You and I agree that if any dispute between us is submitted to a court for resolution, such legal proceeding shall take place in the county in which your principal officers are located.

The Installment Contract contains the following language:

Your purchase of the Manufactured Home is subject to the terms of this contract.

"Contract" means this document and any separate document that secures this contract.

Plaintiffs take the position that these provisions, in agreements which make no reference whatsoever to arbitration or to any separate arbitration agreement, preclude any reasonable finding that the arbitration agreement is part of their contract(s) for the purchase and financing of the subject mobile home. Yet plaintiffs *do not deny,* but rather specifically admit that they signed the arbitration agreement at the same time they signed the purchase and installment agreements and as a part of the transaction by which they acquired the mobile home. The fact that the arbitration provision/agreement was presented, while contemporaneously, on a separate page or as a separate document does not detract from the plain and inescapable fact that the arbitration provision was presented to and signed by plaintiffs as part of their agreement respecting the purchase of the subject mobile home and is therefore enforceable, unless some other cognizable ground exists for invalidating the putative agreement. That brings the court to the second ground urged by plaintiffs for denying defendants' motion, namely, the alleged unconscionability of the arbitration agreement.

■ Under Mississippi law, a court may refuse to enforce a contract, or any clause of a contract which is found to have been unconscionable when made. *See* Miss. Code Ann. § 75–2–302. The court may "pass directly on the unconscionability of the contract or particular clause therein and ... make a conclusion of law as to its unconscionability." Official Comment

Miss.Code Ann. § 75–2–302. As Judge William H. Barbour recently explained, the concept of unconscionability has both procedural and substantive components.

> Under Mississippi law, "[t]here are two types of unconscionability, procedural and substantive." *York v. Georgia–Pacific Corp.*, 585 F.Supp. 1265, 1278 (N.D.Miss.1984). The unconscionability of the contract or clause in question is to be determined under the circumstances as they existed at the time the contract was made. *Id.*
>
> Plaintiff may prove procedural unconscionability if she proves "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *Id.* Procedural unconscionability is "most strongly shown in contracts of adhesion presented to a party on a 'take it or leave it basis.' " *Id.*

. . . . .

> Plaintiff may prove substantive unconscionability if she proves the terms of the arbitration clause were oppressive. *See York*, 585 F.Supp. at 1278. That is, if the arbitration clause, as written, would necessarily operate in such a way as to have an unconscionable effect, it is unconscionable.

*Pridgen v. Green Tree Financial Servicing Corp., Inc.*, 88 F.Supp.2d 655, 658 (S.D.Miss.2000).

As seen from their arguments on this issue, plaintiffs in the case at bar assert both procedural and substantive unconscionability. In support of their position that the arbitration agreement is procedurally unconscionable, plaintiffs contend that they were hurriedly presented numerous papers, including the arbitration document, with no explanation of the terms of the agreement and the salesman telling them, "Don't worry about it... It's just something the owner wants." They submit that "the lack of voluntariness is evidenced by the imbalance of the parties' bargaining power.... The contract was a form contract whose terms were non-negotiable." And as regards substantive unconscionability, they argue that "[t]he Arbitration Contract goes so far as to give Defendant Corporation or its assignees the sole right to choose the arbitrator." The court is unpersuaded by plaintiffs' arguments.

■ While plaintiffs state that at the time they were presented with the agreements for their signatures, the salesman was in a hurry to get the documents signed (ostensibly because he needed to leave to see a sick family member), plaintiffs do not contend that they were unaware *at that time* that they were signing a document by which they were agreeing to arbitrate claims against the defendants.[9] The arbitration provision/agreement was not buried in the fine print, or otherwise hidden from them but rather was presented to them as a separate document headed by the word **"ARBITRATION"** in large, bold letters which are easy to see and read simply by glancing at the document. And although plaintiffs claim that no one explained to them that by signing the document they would be giving up their right to go to court and their right to a jury trial, the document plainly recites, in bold, conspicuous print, **"THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT**

---

**9.** Plaintiffs do state that when their lawyer asked whether they had signed an arbitration agreement, they initially told him "no" because they did not remember having signed one. The court notes that the Fifth Circuit has said that "[a]rbitration can be enforced against a party who signs a document with or without actual awareness of the arbitration provision therein. Under general contract principles, a person is presumed to be aware of what he signs, absent evidence of fraud, misrepresentation or deceit in the acceptance." *Coastal Indus., Inc. v. Automatic Steam Prods. Corp.*, 654 F.2d 375, 380 n. 8 (5th Cir.1981) (citations omitted); *Cf. T & R Enterprises v. Continental Grain Co.*, 613 F.2d 1272, 1273 (5th Cir.1980) (since documents were signed, there was no issue as to the making of an arbitration agreement).

TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE." Plaintiffs do not claim to be illiterate and in fact, both have high school diplomas and are able to read.[10] They do not claim, in fact (or at least have not submitted any evidence to show), that they did not read the document and/or did not gather the meaning of the document, even in the absence of an explanation by the salesman. And they do not claim that they were actually prevented from reading the document. Rather, their position apparently is simply that the salesman downplayed the importance of the document. Finally, while plaintiffs make a point of showing that the salesman was in a hurry, and refer (albeit in a strictly conclusory fashion) to the "imbalance of the parties' bargaining power," they "[do] not contend that, at the time [they] entered into the agreement, [they] was under such 'timing or other pressures' as to have been prevented from 'contract[ing] with another party on more favorable terms or . . . refrain[ing] from contracting at all.' " *Pridgen*, 88 F.Supp.2d at 658 (noting that under Mississippi law, "procedural unconscionability is most likely to be found in a contract of adhesion" (quoting *Entergy Mississippi, Inc. v. Burdette Gin Co.*, 726 So.2d 1202, 1207 (Miss. 1998))). For all of these reasons, the court finds no procedural unconscionability in the arbitration clause.

Plaintiffs' argument regarding substantive unconscionability consists of the following one sentence in their brief: "The Arbitration Contract goes so far as to give

Defendant Corporation or its assignees the sole right to choose the arbitrator." Even if this fact alone could be viewed as rendering the contract so one-sided as to be unconscionable—and obviously it cannot—the fact is, this is not what the agreement states. Rather, it provides for an "arbitrator selected by Assignee with consent of Buyer(s)."

In what the court perceives as a related vein, plaintiffs argue that the fact that the arbitration document was signed only by them, and was not also signed by the defendant seller "shows the lack of mutuality or assent of the parties as well as show[s] the Agreement was not treated with any importance in the overall transaction." They also suggest that this lack of mutuality, even if not fatal in and of itself to formation of a valid contract, nevertheless renders the arbitration one-sided, unfair and unjust.

 The fact that the defendants did not sign the arbitration document and therefore cannot be compelled to arbitrate their disputes with plaintiffs does not prevent enforcement of the agreement against plaintiffs, who admittedly did sign the agreement. Cf. *Gulf Guaranty Life Ins. Co. v. Connecticut Gen'l Life Ins. Co.*, 957 F.Supp. 839, 841 (S.D.Miss.1997) (holding that non-signatory to arbitration agreement may enforce the agreement against a signatory if "the claims against the non-signatory are 'fundamentally grounded' in, 'intimately founded in and intertwined with' 'or arise out of and related directly to' the agreement containing the arbitration clause' ").[11] Moreover, as Judge

---

10. In view of this fact, it is somewhat curious that plaintiffs would cite in support of their position on procedural unconscionability the case of *Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 268 (D.Mich.1976), which they describe as a case in which "an indemnity clause in a retail dealer contract was held unconscionable where the dealer was 'practically illiterate,' did not read the contract, and no one read or explained the contract to him even though the defendant corporation knew of plaintiff's illiteracy or was asked for an explanation of the terms." The situation in *Johnson* is hardly analogous to the position of the plaintiffs in the case at bar.

11. While the arbitration agreement was presented to plaintiffs as a separate document which they signed, but defendants did not, this agreement is not an agreement independent of the underlying purchase agreement, but could appropriately be viewed, in the court's opinion, as an additional provision of the purchase contract by which plaintiffs agreed to abide. Defendants, as signatories to the underlying agreement, are not foreclosed from enforcing the arbitration agreement simply because they did not sign that particular provision so long as lack of mutuality of obligation is not an impediment to enforcement; and in the court's opinion, it is not.

Barbour also recognized in his recent decision in *Pridgen*, "mutuality of obligation [is] not required for [an] arbitration clause to be enforceable, as long as the underlying contract [is] supported by consideration." *Pridgen*, 88 F.Supp.2d at 658.[12]

■ Plaintiffs contend, on another front, that even if there is a valid agreement to arbitrate, the dispute in question does not fall within the scope of that arbitration agreement because the arbitration agreement in question "has no language to indicate it might cover breach of warranty actions, which is the subject of the action at bar." In fact, however, despite the omission of any specific reference in the arbitration provision to breach of warranty claims, there is no question but that the language of the agreement is more than sufficient to encompass breach of warranty

claims. Indeed, in this circuit, the standard for assessing whether a claim is arbitrable is not whether the claim clearly falls within the scope of the arbitration provision, but whether it is clearly excluded from the coverage of the arbitration agreement, for as the Fifth Circuit has held, "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted." *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir.1979) (finding that claims for breach of contract, breach of warranty and negligent design and construction were covered by arbitration clause since "it [could not] be said with positive assurance that the arbitration clause cannot be construed to include [such claims] within its scope"); *see also Harvey v. Joyce*, 199

Moreover, even though defendants did not sign the arbitration agreement, they could potentially be bound, on equitable estoppel principles, to arbitrate claims for which a judicial remedy was not specifically reserved. In this regard, the court would note that Bombardier has, in fact, agreed that it would be bound to arbitrate all claims save those for which the agreement preserves their right to a judicial remedy.

**12.** The arbitration clause at issue in *Pridgen* contained language identical to that set forth in the arbitration provision at issue in this case. There, as here, the agreement reserved unto the assignee "the option to use judicial or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home [which] judicial relief would take the form of a lawsuit." *Pridgen*, 88 F.Supp.2d at 658. That agreement likewise stated that "[t]he institution and maintenance of an action for judicial relief in a court ... shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by Assignee pursuant to this provision." *Id.* At the same time, the assignee in *Pridgen*, as here, preserved the right to compel arbitration as to any other claim, including any counterclaim that the plaintiff might assert in any judicial

action instituted by the assignee. *Id.* Thus, the assignee "generally had an option of whether to sue in court, especially with certain types of claims, or to submit a claim to arbitration" while the plaintiff, "meanwhile, [was] bound to arbitration on any claim she [night] bring on the contract." *Id.* This situation, Judge Barbour observed, was "clearly one-sided." *Id.*

Judge Barbour went on to note that at least where state law does not require mutuality of obligation, the majority of federal courts that have addressed this issue have held that mutuality of obligation is not required for an arbitration clause to be enforceable, as long as the underlying contract was supported by consideration. *Id.* (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 180 (3d Cir.1999)). "That is, the fact that judicial remedies [are] not available to both parties [does] not make the clause unconscionable or unenforceable." *Id.* (citing *Harris*, and also citing *Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438 (2d Cir. 1995); *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167 (6th Cir.1989); *Dorsey v. H.C.P. Sales, Inc.*, 46 F.Supp.2d 804 (N.D.Ill.1999); *Randolph v. Green Tree Fin. Corp.*, 991 F.Supp. 1410 (M.D.Ala.1997)). He noted that mutuality of obligation is not required under Mississippi law for a contract to be enforceable, *id.* (citing *Clinton Serv. Co. v. Thornton*, 233 Miss. 1, 100 So.2d 863, 866 (1958)), and that therefore, the arbitration clause at issue was not unenforceable solely because it was one-sided, *id.*

F.3d 790, 793 (5th Cir.2000) (" '[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . .' " (citing *Moses H. Cone,* 460 U.S. at 25, 103 S.Ct. at 941)); *Pridgen,* 88 F.Supp.2d at 658 (noting that language, "[a]ll disputes, claims or controversies arising from or relating to this Contract or the parties thereto shall be resolved by binding arbitration," under Fifth Circuit precedent, "is to be read very broadly." (citing *Pennzoil Exploration v. Ramco Energy, Ltd.,* 139 F.3d 1061, 1067 (5th Cir.1998), which characterized similar language as "capable of expansive reach")).

In the case at bar, not only can it *not* be said with positive assurance that the arbitration clause *cannot* be construed to include within its scope plaintiffs' breach of warranty claims, but in fact it can be said with positive assurance that plaintiffs' breach of warranty claims *are* within its scope. The arbitration agreement in the case at bar specifically requires arbitration of "all disputes, claims or controversies arising from or relation [sic] to this Contract." Plaintiffs' breach of warranty claims are undeniably directly related to the contract for the purchase of the mobile home, particularly given that one aspect of the relief they seek is recission of that very contract.

▮ Plaintiffs nevertheless submit that their breach of warranty claims, even if they are covered by the language of the arbitration agreement despite the absence of a specific reference, may not properly be made subject to binding arbitration in-

asmuch as the contract documents, considered collectively, do not unambiguously provide for arbitration of their claims against defendants. That is, they contend that whereas the language of the arbitration provision may be construed to render the claims subject to arbitration, other language appearing in the purchase agreement purports to give them a judicial remedy, providing, as it does, for disputes to be "submitted to a court for resolution." Even assuming for the sake of argument that this language creates ambiguity as to the scope of the arbitration agreement,[13] that does not preclude the court from compelling arbitration. On the contrary, the Fifth Circuit has recently addressed a similar issue, stating the following:

> In determining whether a dispute is arbitrable, the court must employ the rules of contract construction to determine the intent of the parties. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). However, "[the FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *See Moses H. Cone,* 460 U.S. at 25, 103 S.Ct. at 941. A finding that the scope of the arbitration clause is vague does not automatically catapult the entire dispute into arbitration. Rather, such a finding creates a presumption in favor of arbi-

---

13. Defendants maintain that "a close reading of the documents shows the existence of no ambiguity." They submit that while judicial remedies are referenced in the Installment Contract, those are not remedies available to the plaintiffs but rather to the seller upon plaintiffs' default and there are in fact no contractual provisions describing *plaintiffs'* rights and remedies in the event they have a claim against Grand Housing or Bombardier under the contract. They point out that while in the Purchase Agreement, there is a paragraph limiting the amount of damages plaintiffs may seek for breach of warranty, no reference is made to whether breach of

warranty claims should be made through arbitration or before a court. And while the Purchase Agreement also provides that Mississippi law will apply to contract disputes, they note that an arbitrator could be bound by Mississippi law, just as could a court. And finally, they note that while the Purchase Agreement states that any dispute "which is submitted to a court for resolution" must be tried in the county of Grand Housing's principal place of business, this provision does not identify what sorts of disputes "may be submitted to a court for resolution," but rather merely defines where they must be brought if a court resolves them.

tration. *See Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941–42. This presumption can be overcome with clear evidence that the parties did not intend the claim to be arbitrable. *See id.*

*Harvey,* 199 F.3d at 793.[14] Likewise, a finding that the scope of the arbitration agreement at issue is ambiguous, when considered in conjunction with other provisions of the parties' contract, creates a presumption or arbitrability which plaintiffs must overcome with "clear evidence that they did not intend their claims to be arbitrable." *Id.* Plaintiffs have not come forward with such evidence.

■ Having concluded that the plaintiffs agreed to arbitrate their breach of warranty claims does not end the court's inquiry or resolve defendants' motion. In addition to their breach of warranty claims, plaintiffs have asserted a claim that Grand Housing, through its sales representative, cashed their check for the downpayment on the purchase despite his having agreed to hold the check for a certain period of time.[15] None of the parties specifically mentions this claim in connection with the present motion and instead, all appear to have focused their attention on the breach of warranty claims.[16] Nevertheless, since the check alleged to have been prematurely negotiated by Grand Housing was the check for plaintiffs' downpayment for their mobile home purchase, their claim relating to Grand Housing's actions relative to that payment is arguably a claim "arising from or relati[ng] to th[e] Contract or the relationships which result from th[e] Contract," and thus, consistent with its charge

to resolve any doubts as to the scope of arbitrable issues in favor of arbitration, the court concludes that the parties intended that this claim, too, would be arbitrable. *See Nauru Phosphate Royalties v. Drago Daic Interests,* 138 F.3d 160, 165 (5th Cir. 1998), *cert. denied,* 525 U.S. 876, 119 S.Ct. 179, 142 L.Ed.2d 146 (1998) ("when parties include such a broad arbitration clause, they intend the clause to reach all aspects of the relationship").

Once it has been determined that the parties agreed to arbitrate the disputes in question, the second step in adjudicating a motion to compel arbitration "is to determine 'whether legal constraints external to the parties' agreement foreclose[ ] the arbitration of those claims.'" *Webb,* 89 F.3d at 257–58 (citations omitted). In this case, it appears that there is indeed an external "legal constraint" which precludes binding arbitration of one of plaintiffs' claims. In their complaint, directly following their allegation of breach of implied warranties, plaintiffs allege, without elaboration, that "[t]he defects in the home are also a breach of express warranties on the home." The only clue in the record as to the factual basis of plaintiffs' claim for breach of express warranty appears in the notice of removal, in which defendants recite as follows:

> Plaintiffs' purchase of the Manufactured Home was purportedly induced by the express warranties listed and enumerated in a brochure prepared and compiled by Defendant, Grand Housing. Further, plaintiffs purportedly relied on the express warranties and representa-

---

**14.** Plaintiffs' reliance on *Nicholas Acoustics & Specialty Co. v. H & M Construction Co., Inc.,* 695 F.2d 839, 843 (5th Cir.1983), for the proposition that "[v]ague or ambiguous contractual terms are construed more strongly against the party drafting them," is misplaced in the context of a vague or ambiguous *arbitration* agreement, which is instead governed by the rule stated in *Harvey.*

**15.** Plaintiffs also purport to assert a claim—apparently for misrepresentation—based on their allegation that Grand Housing's sales representative told them they could expect utility bills in the $75 to $80 range. Plaintiffs

allege elsewhere in the complaint, though, that their utility bills were higher than anticipated due to the defects in the home. Accordingly, this claim is merely a derivative of plaintiffs' breach of warranty claims.

**16.** Bombardier, for example, argues in its brief that "Plaintiffs' allegations concerning alleged defects in their mobile home arise from or relate to the contract in issue or the relationships which resulted from this contract and are therefore undeniably referable to binding arbitration...." Plaintiffs themselves characterize the breach of warranty claims as "the subject of the action at bar."

tions made by Defendant, Grand Housing, prior to and at the time of purchase, and advertisements in mass communications media, publicly distributed and announced in Plaintiffs' county of residence.

Plaintiffs allege that the Defendants, Grand Housing and Bombardier, breached the warranties and representations in that the Manufactured Home was not trouble free or free from defects in materials and workmanship under normal use and service, and was not manufactured with a high degree of quality in workmanship and craftmanship.

Thus, plaintiffs are apparently asserting in this action a claim for breach of an express written warranty by Grand Housing.

█ While the parties make no mention of this fact, the court is aware that a number of courts (primarily Alabama state and federal courts) have expressly held that while an agreement for binding arbitration may be enforced on claims for breach of non-written warranties and implied warranties, *binding* arbitration of written warranties, in transactions to which the Magnuson–Moss Warranty Act applies, is forbidden by that Act.[17] *See Southern Energy Homes, Inc. v. Lee*, 732 So.2d 994, 999–1000 (Ala.1999) (holding that "the general provisions of the [FAA] are superseded by the subsequent and specific provision in the Magnuson–Moss Act by which Congress has prohibited the inclusion in written warranties of clauses calling for binding arbitration."); *Wilson v. Waverlee Homes, Inc.*, 954 F.Supp. 1530,

1532 (M.D.Ala.1997) (concluding that enforcement of binding arbitration clause in contracts for sale and financing of mobile home would violate Magnuson–Moss Warranty Act), *aff'd*, 127 F.3d 40 (11th Cir. 1997) (table); *Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423 (M.D.Ala.1997) ("Congress did not intend in the Magnuson–Moss Act to override the FAA's general mandate and preclude binding arbitration of non-written and implied warranty claims", only to preclude mandatory binding arbitration of written warranties); 40 Fed.Reg. 60211 (1975) (stating that "reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the [Magnuson–Moss Warranty] Act"); *see also Rhode v. E & T Investments, Inc.*, 6 F.Supp.2d 1322 (M.D.Ala.1998) (holding that to the extent complaint stated express warranty claims against seller, Magnuson–Moss Act prevented the seller from invoking the arbitration clause in the sales contract but to the extent the complaint also stated implied warranty claims against the seller, it could invoke the arbitration clause in the sales contract). Although the court is of the opinion that plaintiffs should be compelled to submit their implied warranty claims (as well as their putative misrepresentation, negligence and breach of contract claims) to binding arbitration in accordance with their agreement to do so, the court, in light of the cited authorities, will deny at this time defendants' motion to compel arbitration as it relates to their claim for breach of an express written warranty.[18] Further, because it does ap-

---

**17.** Congress enacted the Magnuson–Moss Warranty Act in 1974 "[i]n order to improve the adequacy of information available to consumers, [and] to prevent deception." 15 U.S.C. § 2302(a). The Act establishes "clear and comprehensive requirements regarding disclosures, duties, and remedies associated with warranties on consumer products." *Wilson v. Waverlee Homes, Inc.*, 954 F.Supp. 1530, 1532 (M.D.Ala.1997) ("The provisions of the [Magnuson–Moss Warranty Act] that create a private cause of action permit a 'consumer' to sue a warrantor for (1) a violation of the substantive provisions of the Act, or (2) breach of a written or implied warranty."), *aff'd*, 127 F.3d 40 (11th Cir.1997) (ta-

ble); *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1062–63 (5th Cir.1984). Under the Act, "consumer" is defined as " 'a buyer (other than for purposes of resale) of a consumer product," *id.* at 1063 n. 6.; the Fifth Circuit held in *Boelens* that a mobile home is a "consumer product." *See id.* In this case, the plaintiff consumers do not allege a violation of the substantive provisions of the Act but rather allege "breach of warranty pursuant to the Magnuson–Moss Warranty Act."

**18.** Although the plaintiffs have not raised this issue specifically as a basis for defeating defendants' demand for binding arbitration on any of the claims alleged, it is obvious that

pear that the express warranty claim is not arbitrable, or at least that plaintiffs may not be compelled to submit such claims for binding arbitration, the court will deny defendants' motion to dismiss these proceedings. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (FAA requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where result would be possibly inefficient maintenance of separate proceedings in different forums); *Bhatia,* 818 F.2d at 420 (recognizing that under *Byrd,* "where a valid arbitration agreement exists, a district court must compel arbitration despite intertwining with non-arbitrable claims"); *cf. Austin Municipal Securities v. National Ass'n of Securities Dealers, Inc.,* 757 F.2d 676, 697 (5th Cir. 1985) (holding that district court "lacks discretion to decide whether to stay [judicial] proceedings, despite the presence of any intertwining nonarbitrable claims").

Accordingly, based on the foregoing, it is ordered that defendants' motion to compel arbitration with respect to plaintiffs' claims is granted, with the exception that plaintiffs are not compelled to arbitrate any claims for breach of express warranties they may have against defendants. Thus, it is further ordered that defendants' motion to dismiss is denied.

they do not prefer arbitration to a judicial remedy, given that they have resisted defendants' motion to compel arbitration on other grounds. Nevertheless, in light of the plaintiffs' failure to raise this particular issue, the court is somewhat reluctant to broach the issue on its own. Should the defendants desire to address the issue, they will be given the opportunity to do so. Defendants should advise the court within ten days of the entry of this opinion whether they wish to submit a brief to the court on this, or any related issue. If they do, plaintiffs will have the opportunity to respond.