Mary SMITH, Robert Goodin and Sandra Goodin, Plaintiffs,

v.

EQUIFIRST CORPORATION, Underwriters Group Services, Inc., and World Mortgage Company, Defendants.

No. Civ.A. 300CV443LN.

United States District Court, S.D. Mississippi, Eastern Division.

Aug. 25, 2000.

Charles E. Gibson, III, Attorney, Jackson, MS, Ronald H. Pierce, Attorney, Pearl, MS, for plaintiffs.

J. Stevenson Ray, Edward A. Wilmesherr, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants EquiFirst Corporation and World Mortgage Company (WMC) to compel arbitration and to dismiss. Plaintiffs Mary Smith and Robert and Sandra Goodin have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendants' motion is well taken and should be granted.

In May 1999, plaintiffs Robert and Sandra Goodin obtained a mortgage loan from EquiFirst, evidenced by a deed of trust and related documents executed by the Goodins on May 27, 1999. Likewise, in September 1999, plaintiff Mary Smith obtained a mortgage loan from EquiFirst, evidenced by a deed of trust and related loan documents executed by Smith on September 14, 1999. Plaintiffs brought the present action in May 2000 asserting claims for ·violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.* in connection with their loans.[1] EquiFirst, joined by WMC, promptly moved to compel arbitration of plaintiffs' claims, contending that plaintiffs, as evidenced by the loan documents, and in particular an "Arbitration Rider" executed by plaintiffs at the time they obtained their loans, agreed to submit to binding arbitration "[a]ny claim, dispute, or controversy ... arising from or related to the loan." Plaintiffs deny that their claims are subject to arbitration.

---

1. Specifically, plaintiffs allege that in connection with the settlement of the loan, EquiFirst, the lender, paid WMC, a mortgage broker, a "yield spread premium," allegedly in the form of a kickback, in violation of RESPA. As provided for by RESPA, plaintiffs seek to recover three times the amount of the kickback, together with attorneys' fees and costs.

Under the Federal Arbitration Act (FAA), a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[2] Section 3 of the FAA provides for staying proceedings in federal district courts when an issue in the proceedings is referable to arbitration, 9 U.S.C. § 3; and section 4 provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, 9 U.S.C. § 4. Under § 4, then, "if a party to an agreement refuses to arbitrate, the opposing party may bring an action to compel arbitration, and after hearing the parties the court 'being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue,' shall direct the parties to arbitrate." If, though, " 'the making of the arbitration agreement or the failure ... to perform the same be in issue',," Section 4 directs that "the court shall proceed summarily to the trial thereof.' "[3]

The Fifth Circuit has explained that,

[i]n adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-step inquiry. The first step is to determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.... The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims."

*Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir.1996) (citations omitted). Commenting further on the court's charge when addressing a motion to compel arbitration, this court noted in *Raesly v. Grand Housing, Inc.*, 105 F.Supp.2d 562 (S.D.Miss. 2000), that,

When deciding the broader issue of whether the parties agreed to arbitrate the dispute in question, "the court must look to the body of federal arbitration law," [*Bhatia v. Johnston*, 818 F.2d 418, 421 (5th Cir.1987) ], which recognizes that "the question of arbitrability [is to] be addressed with a 'healthy regard for the federal policy favoring arbitration,' with doubts regarding the scope of the agreement resolved in favor of arbitration," *id.* (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). As to the more specific issue of whether there is a valid agreement to arbitrate, " 'courts gener-

---

**2.** Defendants urge, and plaintiffs do not dispute, that the subject mortgage loans were interstate transactions and that the agreement in question thus falls under the purview of the FAA.

**3.** The Fifth Circuit has remarked that "the question of what issues a party can be compelled to arbitrate [ ] is an issue for the court rather than the arbitrator to decide", *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1066 (5th Cir.1998), *unless* there is "clear and unmistakable evidence" that the contracting parties "agree[d] to submit the question of arbitrability to an arbitrator." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 n. 3 (5th Cir.1996) ("While contracting parties may agree to submit the question of arbitrability to an arbitrator, courts should not assume that the parties agreed to arbi-

trate arbitrability unless there is clear and unmistakable evidence that they did so." (internal quotations omitted)). Here, the arbitration agreement recites that "any dispute or controversy over the applicability or enforceability of this arbitration agreement or the entire agreement between Borrower and Lender (collectively 'claim'), shall be resolved, upon the election of either Borrower or Lender, by binding arbitration, and not by court action." While this would appear to constitute "clear and unmistakable evidence" that the parties agreed that the issue of arbitrability could be submitted to an arbitrator for decision, neither party has broached this issue,. and the court thus assumes that the parties have not elected to have an arbitrator decide the issue and have instead left it to the court for resolution.

ally ... should apply ordinary state-law principles that govern the formation of contracts'," *Webb*, 89 F.3d at 257 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)), but in doing so, must give "due regard ... to the federal policy favoring arbitration," *id.* (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 1253–54, 103 L.Ed.2d 488 (1989)).

*Raesly*, at 569–70.

In response to defendants' motion in the case at bar, plaintiffs assert a variety of arguments against enforcement of the arbitration agreement at issue, based primarily on their contention that the agreement is unconscionable and for that reason may not be enforced. This court observed in *Raesly* that "[u]nder Mississippi law, a court may refuse to enforce a contract, or any clause of a contract which is found to have been unconscionable when made. *See* Miss.Code Ann. § 75–2–302. The court may 'pass directly on the unconscionability of the contract or particular clause therein and ... make a conclusion of law as to its unconscionability.' Official Comment Miss.Code Ann. § 75–2–302." *Raesly*, at 574. The court, quoting Judge William H. Barbour's opinion in *Pridgen v. Green Tree Financial Servicing Corp., Inc.*, 88 F.Supp.2d 655, 658 (S.D.Miss. 2000), recognized that "the concept of unconscionability has both procedural and substantive components'."

Under Mississippi law, "[t]here are two types of unconscionability, procedural and substantive." *York v. Georgia–Pacific Corp.*, 585 F.Supp. 1265, 1278 (N.D.Miss.1984). The unconscionability of the contract or clause in question is to be determined under the circumstances as they existed at the time the contract was made. *Id.*

Plaintiff may prove procedural unconscionability if she proves "a lack of knowledge, lack of voluntariness, incon-

spicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *Id.* Procedural unconscionability is "most strongly shown in contracts of adhesion presented to a party on a 'take it or leave it basis.' " *Id.*

. . .

Plaintiff may prove substantive unconscionability if she proves the terms of the arbitration clause were oppressive. *See York*, 585 F.Supp. at 1278. That is, if the arbitration clause, as written, would necessarily operate in such a way as to have an unconscionable effect, it is unconscionable.

*Id.* at 574–75 (quoting *Pridgen*, 88 F.Supp.2d at 658).

The plaintiffs herein urge that the arbitration agreement is both procedurally and substantively unconscionable, procedurally, because the plaintiffs were unaware of and/or failed to comprehend the full meaning of the agreement and/or had no alternative but to sign the agreement, and substantively, because the agreement fails to provide the plaintiffs an adequate substitute for a judicial forum in protecting their statutory rights. They submit that the agreement is therefore unenforceable. The court first addresses their claim of substantive unconscionability.

Because plaintiffs challenge the arbitration agreement as substantively unconscionable, it is helpful to understand what the agreement provides, so the agreement is set out below in its entirety:

### ARBITRATION RIDER

(To Be Recorded Together With The Security Instrument)

\*\*\*

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,

Borrower and Lender further covenant and agree as follows:

**ARBITRATION OF DISPUTES.** Any claim, dispute, or controversy (whether in contract, tort, or otherwise) arising from or related to the loan evidenced by the Note, including but not limited to all statutory claims, any claim, dispute or controversy that may arise out of or is based on the relationships which result from the Borrower's application to the lender for the loan, the closing of the loan, or the servicing of the loan, or any dispute or controversy over the applicability or enforceability of this arbitration agreement or the entire agreement between Borrower and Lender (collectively "claim"), shall be resolved, upon the election of either Borrower or Lender, by binding arbitration, and not by court action, except as provided under "Exclusions from Arbitration" below.

This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. Sections 1–16) and the Code of Procedure of the National Arbitration Forum in effect at the time a claim is filed. Copies of the arbitration rules and forms can be obtained and any claims can be filed at any National Arbitration Forum office, at P.O. Box 50191, Minneapolis, MN 55404, on the World Wide Web at *www.arb-forum.com.* Or by calling (800) 474–2371.

This agreement to arbitrate shall apply no matter by whom or against whom a claim is made. Any election to arbitrate may be made at any time, regardless of whether a lawsuit has been filed or not, and such party making the election may bring a motion in any court having jurisdiction to compel arbitration of any claim, and/or to stay the litigation of any claims pending arbitration. Any participatory arbitration hearing will take place in the federal judicial district of the Borrower's residence, unless a different location is agreed to by Borrower and Lender. At Borrower's request, Lender will advance the first $150 of the filing and hearing fees for any claim which the Borrower may file against Lender. The arbitrator will decide which party will ultimately be responsible for paying these fees. All claims between the Borrower and Lender shall be arbitrated individually, and shall not be subject to being joined or combined in any proceeding with any claims of any persons, or class of persons other than Borrower or Lender. The arbitrator shall apply relevant law and provide written, reasoned findings of fact and conclusions of law. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

**EXCLUSIONS FROM ARBITRATION.** This arbitration agreement shall not apply to rights or obligations under the loan documents that allow the Lender to foreclose or otherwise take possession of property securing the loan, including repossession, foreclosure or unlawful foreclosure. Nor shall it be construed to prevent any party's use of bankruptcy or judicial foreclosure. No provision of this agreement shall limit the right of the Borrower to exercise Borrower's rights under the Uniform Covenant labeled "Borrower's Right to Reinstate". Subject to these limitations, this arbitration agreement will survive the pay-off of the loan.

**SEVERABILITY.** If the arbitrator or any court determines that one or more terms of this arbitration agreement or the arbitration Code are unenforceable, such determination shall not impair or affect the enforceability of the other terms of this arbitration agreement or the arbitration Code.

**NOTICE.** WHEN YOU SIGN THIS ARBITRATION RIDER, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE MAY BE DECIDED EXCLUSIVELY 'BY ARBI-

TRATION. YOU ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH A CLAIM OR DISPUTE. DISCOVERY IN ARBITRATION PROCEEDINGS IS LIMITED IN THE MANNER PROVIDED BY THIS AGREEMENT AND THE RULES OF ARBITRATION. THE ARBITRATOR'S DECISION WILL GENERALLY BE FINAL AND BINDING. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION. IT IS IMPORTANT THAT YOU READ THIS ENTIRE ARBITRATION AGREEMENT CAREFULLY BEFORE SIGNING THIS ARBITRATION RIDER.

BY SIGNING BELOW, Borrower accepts and agrees to the provisions contained in this Rider.

There can be no doubt that plaintiffs' claims in this case fall within the scope of this decidedly broad arbitration agreement.

The Supreme Court held in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), that federal "statutory claims may be the subject of an arbitration agreement enforceable pursuant to the FAA," unless the plaintiff shows either that Congress intended to prohibit arbitration under the particular federal statute at issue, or that the arbitral forum is not an adequate substitute for a judicial forum. *Id.* The Fifth Circuit elaborated on these matters in *Williams v. Cigna Financial Advisors, Inc.*, 197 F.3d 752, 763 (5th Cir.1999), stating,

The Supreme Court in *Gilmer* made it clear that a party agreeing to arbitrate a federal statutory claim does not forego the substantive rights afforded by the statute, and that claims under federal statutes are appropriate for arbitration so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, and the statute will continue to serve both its remedial and deterrent function. *Gilmer*, 500 U.S. at 26, 28, 111 S.Ct. ·1647, 114 L.Ed.2d 26. *Gilmer*, and the cases upon which it relies, make clear that whether a federal statutory claim can be subject to compulsory arbitration depends upon whether the particular arbitral forum involved provides an adequate substitute for a judicial forum in protecting the particular statutory right in issue.

*See also Graham Oil v. ARCO Prods., Inc.*, 43 F.3d 1244, 1248 (9th Cir.1994) (holding unenforceable agreement which required plaintiffs to "forfeit certain important statutorily-mandated rights").

Plaintiffs maintain that the arbitration agreement at issue does not provide an adequate substitute for a judicial forum in protecting their statutory rights under the RESPA, first, because it seeks to prohibit plaintiffs from recovering their attorneys' fees and costs in the event they prevail, a substantive right afforded them by the RESPA. In support of their contention in this regard, plaintiffs direct the court's attention to the rules of the American Arbitration Association, which provide that each party is to pay his or her own attorneys' fees. The question whether such a rule would warrant the conclusion of unconscionability urged by plaintiffs is a question with which this court need not concern itself, for the arbitration agreement at issue in this case does not utilize the American Arbitration Association as a forum,[4] but rather provides that the arbi-

---

**4.** The court would note, though, that in *Gray v. WMC Mortgage Corp.*, Civil Action No. 3:00CV211BN (S.D.Miss. June 28, 2000),

Judge Barbour rejected the plaintiffs' argument that the AAA attorneys' fee/costs rule precluded the arbitrator from awarding attor-

tration will be conducted under the Code of Procedure of the National Arbitration Forum (NAF). The NAF Code of Procedure, in contrast to the AAA provision, contains no limitation as to the payment of attorneys' fees or costs, and instead in Rule 20 expressly provides that the "Arbitrators may grant any remedy or relief allowed by applicable substantive law and based on a Claim, Response, or Request properly submitted by a Party under this Code." From the foregoing, it is plain that plaintiffs' position on this point is without merit.

A number of courts have recognized that an arbitral forum may be an inadequate substitute for a judicial forum, and an arbitration clause unenforceable, if "it fails to provide the minimum guarantees required to ensure that [the plaintiff's] ability to vindicate her statutory rights will not be undone by steep filing fees, steep arbitrators' fees or other high costs of arbitration." *Randolph v. Green Tree Financial Corp.–Alabama,* 178 F.3d 1149, 1157 (11th Cir.1999), *cert. granted,* —— U.S. ——, 120 S.Ct. 1552, 146 L.Ed.2d 458 (2000); *see also Shankle v. B–G Maintenance Mgmt. of Colorado, Inc.,* 163 F.3d 1230, 1234 (10th Cir.1999) (holding unenforceable an agreement requiring plaintiff to pay one-half of arbitrator's fees—$1,875 to $5,000 if arbitration lasted average length of time-where plaintiff could not afford the fee; agreement "placed [plaintiff] between the proverbial rock and a hard place—it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum")"; *Cole v. Burns Int'l Security Servs.,* 105 F.3d 1465, 1484–85 (D.C.Cir.1997) (refusing to enforce arbitration agreement which required plaintiff to pay all or part of fees of arbitrator, which fees would be "prohibitively expensive for an employee like [the plaintiff] and were "unlike anything he

would have to pay to pursue his statutory claims" in a judicial forum); *Jones v. Fujitsu Network Communications,* 81 F.Supp.2d 688, 692–93 (N.D.Tex.1999) (requiring plaintiff to pay one-half of arbitrator's fee, court reporter's fee, fee for arbitrator's copy of transcript and facilities costs would render him unable to pursue his statutory claims and was therefore unenforceable).

■ Taking up this theme, plaintiffs urge that the arbitration provided for by the Arbitration Rider is not an adequate substitute for a judicial forum in protecting their statutory rights under the RESPA since the agreement "say[s] nothing about the payment of filing fees or the apportionment of costs of arbitration; [it] neither assign[s] an initial responsibility for filing fees or arbitrators' costs, nor provide[s] for a waiver of fees except in cases of extreme financial hardship," and "[i]t does not say whether Plaintiffs, if they prevail, will nonetheless be saddled with fees and costs in excess of any award." Plaintiffs thus conclude that, since arbitrator's fees in the "average" case range between $3,750 and $14,000, *Cole v. Burns Int'l Security Servs.,* 105 F.3d 1465, 1481 (D.C.Cir.1997), the arbitration agreement imposes a substantial financial burden on them and acts as a substantial barrier to the adequate resolution of their claims. Indeed, they submit that even if they prevail, they could nonetheless be saddled with fees and costs in excess of any award.

Plaintiffs' position on this point is based on a patently incorrect premise, namely, that the arbitration agreement wholly fails to address the subject of fees and costs and leaves them open to a relatively exorbitant assessment for fees and costs. As indicated *supra,* the Arbitration Rider adopts the NAF Code of Procedure; and the NAF Code of Procedure includes a "Fee Schedule" which sets filing and hearing fees by reference to the amount of a

neys' fees and costs as permitted by RESPA and thus refused to deny arbitration on that

basis.

plaintiff's claim. For claims under $5,000 (plaintiff Smith asserts her maximum recovery will not exceed $1,116 plus attorneys' fees and costs), the fee schedule provides for a filing fee of $49 and an administrative fee of $225; and for claims under $15,000 (the Goodin's claim is for a maximum of $5,508, together with attorneys' fees and costs), the filing fee is $100 and the administrative fee $425. Moreover, the Arbitration Rider provides that, "[a]t the Borrower's request, Lender will advance the first $150 of the filing and hearing fees for any claim which the Borrower may file against the Lender. The arbitrator will decide which party will ultimately bear responsibility for paying these fees." The NAF Fee Schedule also states that "[a]n individual who is indigent and cannot afford to pay a fee may not have to pay a Consumer Small Claim fee." And finally, as is pertinent here, the Fee Schedule states than the "arbitrator may order the losing party to pay the fees paid by the prevailing party."

These provisions respecting payment of fees and costs foreclose only the plaintiffs' contention that the agreement does not provide them an adequate arbitral forum as an alternative to a judicial forum; the fees provisions do not foreclose plaintiffs' access to an arbitral forum that compares favorably to a judicial forum. For the reasons given, the court rejects plaintiffs' contentions on the subject of substantive unconscionability and turns now to their claim of procedural unconscionability.

■ In this vein, plaintiffs argue that the arbitration agreement is unconscionable and unenforceable because of "Plaintiffs' lack of knowledge of the agreement [ ], the lack of voluntariness of the agreement [ ], the fact that the Arbitration Agreement [ ][was] inconspicuous because [it was] hidden in a large stack of documents unfamiliar to the Plaintiffs, because of the disparity in sophistication or bargaining power or the parties and/or the Plaintiff[s'] lack of opportunity to study the agreements and inquire about the terms." *See Pridgen,* 88 F.Supp.2d at 658 ("Plaintiff may prove procedural unconscionability if she proves 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms.'").

As defendants correctly note, an arbitration agreement such as that here presented is not inherently unconscionable, *see Ex Parte McNaughton,* 728 So.2d 592, 597 (Ala.1998) (observing that "there is nothing inherently unfair or oppressive about arbitration clauses" (quoting *Coleman v. Prudential Bache Securities, Inc.,* 802 F.2d 1350, 1352 (11th Cir.1986)); *Sims v. Unicor Mortgage, Inc.,* No. 4:98CV25DB (N.S.Miss.1998) ("An agreement to arbitrate claims against a provider of a substantial loan is certainly not 'one such as no man in his senses ... would make....'") (quoting *Johnson v. Robinson,* 351 So.2d 1339, 1341–42 (Miss.1977)); and in the court's opinion, plaintiffs have failed to identify any circumstance relating to the presentation of the arbitration agreement and/or circumstances surrounding their execution of the Arbitration Rider (and related documents) that would render the agreement enforceable on grounds of procedural unconscionability.

■ While plaintiffs state that the arbitration agreement was inconspicuous and was hidden from them, and state that they "did not know they were signing an Agreement to Arbitrate," the fact is, the Arbitration Rider was set forth in a separate document, which plainly and clearly described itself as an "Arbitration Rider" in large, easy-to-read print; and it was separately signed by plaintiffs.[5] Plaintiffs

---

5. The court notes, too, that in addition to the Arbitration Rider signed by plaintiffs, the Deed of Trust executed by the parties express-ly mentions the Arbitration Rider and states that "the covenants and agreements of each such rider shall be incorporated into and

could only have been unaware that they were signing an arbitration agreement if they failed to so much as glance at the heading on the document; a failure by plaintiffs to so inform themselves of what they were signing does not make the agreement unconscionable or unenforceable. Furthermore, while plaintiffs state that the agreement was not explained to them, they do not claim that they were prevented, by timing or other pressures, from reading the document, which is clearly written and self-explanatory. Nor do they assert that they were prevented from asking questions about the document or from requesting an explanation of the agreement or any provision thereof.

In *Raesly*, this court rejected the plain-·tiffs' argument of procedural unconscionability in connection with their agreement to arbitrate, noting that the challenged arbitration agreement "was not buried in the fine print, or otherwise hidden from [the plaintiffs] but rather was presented to them as a separate document headed by the word **'ARBITRATION'** in large, bold letters which are easy to see and read simply by glancing at the document." The court observed that "although plaintiffs claim[ed] that no one explained to them that by signing the document they would

be giving up their right to go to court and their right to a jury trial, the document plainly recites, in bold, conspicuous print, 'THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE.'" *Id.; see also Gray v. WMC Mortgage Corp.,* No. 3:00CV211BN, slip op. at 5 (S.D.Miss. June 28, 2000) (concluding, in the face of a substantially identical argument by the plaintiffs, that there was no procedural unconscionability since, "[d]espite the Plaintiffs' assertions that they had no knowledge of the agreement and that the agreement was inconspicuous, ... the agreement was contained in a document separate and distinct from all the other loan documents [and] was signed by each Plaintiff separately from all the other closing documents.").

Plaintiffs further argue that because the arbitration agreement was "sprung on them for the first time" at the loan closing, they had no real choice but to sign since at that point, it was too late to seek financing from another lender on more favorable terms.[6] However, evidence presented by

shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument." Moreover, in addition to signing the Deed of Trust and Arbitration Rider, the plaintiffs executed a separate Borrower Certification which acknowledged that the loans would be subject to the Arbitration Rider, providing as follows:

Prior to closing on my loan I have received and I have read a sample copy of the Arbitration Rider to the Mortgage, Deed of Trust or Security Deed (the "security Instrument") that I will sign at the loan closing and which will be attached to and recorded with the Security Instrument. My signature on the Arbitration Rider constitutes my approval of and consent to that arbitration agreement.

Further, a written disclosure statement signed by each plaintiff in connection with his/her loan stated that the loan would be subject to the Arbitration Rider, as follows:

**ARBITRATION**

An Arbitration Rider will be attached to and recorded with the Mortgage, Deed of Trust or Security Deed that you sign in connection with this loan. When you sign the Arbitration Rider you will agree that any and all claims or disputes against the Lender that you have or may have in the future shall be decided exclusively by arbitration, at the election of either you or the Lender. When you sign the Arbitration Rider you will be giving up any rights you may have to litigate such claims or disputes in a court or jury trial. Because you will be giving up such rights you should carefully read the terms and provisions of the agreement to arbitrate that are contained in the Arbitration Rider.

6. They state that the Goodins were particularly at a disadvantage because they were in a hurry to refinance due to high interest credit card debt and the fact that Mr. Goodin was facing unemployment "when the arbitration agreement was sprung on them."

defendants reflects that EquiFirst mailed notice of the arbitration provision to the plaintiffs prior to the closing—a month prior in the case of the Goodins and a week prior in Smith's case. For these reasons, the court finds no procedural unconscionability in the arbitration clause.

 Plaintiffs contend that even if they must arbitrate their claims against EquiFirst, which is a signatory to the arbitration agreement, they cannot be compelled to arbitrate their claims against WMC, which was not a signatory to the arbitration agreement between plaintiffs and EquiFirst. For two reasons, the court concludes otherwise. First, the arbitration agreement expressly provides for arbitration not just of claims against EquiFirst but of "any claim, dispute or controversy that may arise out of or is based on the relationships which result from the Borrower's application to the lender for the loan," and makes clear that "[t]his agreement to arbitrate shall apply no matter by whom or against whom a claim is made." The relationship between plaintiffs and WMC (as well as between WMC and EquiFirst) is one that results from the plaintiffs' loan application and thus is subject to arbitration under the terms of the agreement, whether or not WMC is a signatory. In any event, the court is of the opinion that "the plaintiff[s] 'raise[ ] allegations of substantially interdependent and concerted misconduct by both the nonsignatory (WMC) and one or more of the signatories to the contract (EquiFirst),'" *Grigson v. Creative Artists Agency*, 210 F.3d 524, 527 (5th Cir.2000), i.e., that EquiFirst paid an illegal kickback to WMC in relation to plaintiffs' loan closings, and that therefore, the claims against WMC are subject to arbitration. *Id.* ("[A]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the

arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."); *see also Blount v. National Lending Corp., Inc.*, No. 3:00CV266BN (S.D.Miss. July 20, 2000) (holding claims for illegal kickbacks against nonsignatory mortgage brokers subject to arbitration); *Gray v. WMC Mortgage Corp.*, No. 3:00CV211BN (S.D.Miss.2000) (same).

For the foregoing reasons, it is ordered that the motion of EquiFirst, joined by WMC, to compel arbitration is granted and this cause is dismissed.