CLINTON SERVICE COMPANY *v.* THORNTON, et al.

No. 41653          January 30, 1961          126 So. 2d 252

*Pyles & Tucker*, Jackson, for appellant.

*J. E. Skinner,* Jackson, for appellee.

McGehee, C. J.

This case first appeared here as a suit to enforce the specific performance of the provisions of a contract entered into between the appellant and the appellees on June 7, 1949. The appeal had been taken from a decree

of the Chancery Court of Hinds County sustaining a demurrer to the bill of complaint, and the cause was reversed as reported in 233 Miss. 1, 100 So. 2d 863.

While the case was pending on the said appeal, the filling station of Thornton Brothers near Van Winkle on U. S. Highway 80 in Hinds County was demolished. Hence on remand the appellant Clinton Service Company amended its bill of complaint and converted the suit into one for damages for a breach of the said contract instead of one for specific performance. The contract referred to the appellant as the seller and to Thornton Brothers as the buyer of the Shell Petroleum Products which were to be sold by the appellant to the appellees, and which said contract provided in substance that should the buyer decide to sell the site and property of the Thornton Brothers Filling Station, or should elect to discontinue the sale of such petroleum products of the seller, the latter would be granted the irrevocable option to have the buyer execute to the seller, or its grantee, a lease on said premises for a period of ten years, with an option to extend the same for a like period at a rental of $5 per month throughout the said lease or the extension thereof, plus One Cent per gallon on all gasoline sold by the seller to the buyer.

R. D. Thornton as a witness at the trial of the instant case gave the following testimony: Q. "And you breached and broke that contract, didn't you?" A. "That's right." Q. "Now at the time you closed the service station in 1957, the contract that your brother had signed (with the Clinton Service Company) on June 7th, had over two years to run, didn't it?" A. "About two and one-half years, yes, sir."

In other words the chancellor was warranted in finding as a fact that the appellees breached their contract, based on the admission of the appellee R. D. Thornton.

The testimony on behalf of the appellees tended to show that during the latter part of 1956 the Thornton

Brothers had decided to move their filling station across Highway 80, a short distance to the east of its former site; that they contacted Mr. M. G. Acker, President of the Clinton Service Company, which corporate name was later changed from Clinton Service Company, Clinton, Mississippi, to Acker Petroleum Company, Greenville, Mississippi, and that he made no objection to the proposed change of location.

It appears also that the Clinton Service Company had assisted Thornton Brothers in securing finances from the First Federal Building and Loan Association of Jackson, Mississippi, and from the Bank of Clinton to build their former service station on a triangular lot which belonged to the appellees and that this was one of the considerations for entering into the said contract whereby they agreed to purchase Shell products at wholesale from the Clinton Service Company and to execute to the Clinton Service Company a ten-year lease with a right of renewal thereof on the said service station in the event they should discontinue the use of the said Shell Petroleum Products which they were to purchase from the appellant.

When the appellees decided to move their service station to the new location they had one or more conferences with Mr. Acker in regard to getting him to select a new site and location. The appellees contend that the Clinton Service Company made no objection to their moving the service station, or rather building a new one, on the other side of the highway and to the east of the original service station.

At any rate, the proof discloses that finally the Clinton Service Station sold the equipment at the former service station to the Shell Oil Company and that the latter removed all of said equipment from the former service station site.

The chancellor allowed the appellant to recover damages for the period from February 1, 1957, to May 1.

1957, at the rate of $905.23 per month, which sum was the alleged average net profit per month made by the appellant on petroleum products sold by it to the appellees during the previous seven years of operation. The date of February 1, 1957, was to represent the date on which the Thornton Brothers discontinued its purchase of Shell Petroleum Products from the appellant, and the date of May 1, 1957, was to represent the date on which the appellant ceased to be able to comply with the contract on its part, since its contract with the Shell Oil Company to handle its products had expired and was being continued until May 1, 1957, under a temporary arrangement between the Clinton Service Company and the Shell Oil Company. The chancellor thought that to allow damages for a period subsequent to May 1, 1957, would be purely speculative and conjectural and therefore the decree in favor of the appellant was for the sum of $2,715.69. From this decree the Clinton Service Company prosecutes this appeal and the appellees prosecute a cross appeal.

Of course, if Thornton Brothers, after discontinuing the use of the petroleum products which were being sold to them by the appellant, had executed the ten-year lease on the original service station, with the right of renewal for a like period, it is problematical as to whether or not the operator under such ten-year lease would have been able to have purchased and sold as much petroleum products as had been sold at this station by Thornton Brothers. Additional service stations in the fast growing area could have made competition strong enough to have reduced the quantity of petroleum products that the new lessee may have sold. The total income to the Clinton Service Company during such new lease would have also depended upon the price of gasoline during that period and numerous other factors.

We have concluded that the chancellor was correct in denying the demand of the appellant for dam-

ages in the sum of $219,255.80 for failure of the appellees to execute the new lease, and in limiting the damages to the period from February 1, 1957, to May 1, 1957, when the appellant was able to perform its part of the contract in supplying Shell Products for use of the appellees. The appellant was entitled to damages in the amount of the value of the lease from February 1, 1957, until May 1, 1957, and whether or not the chancellor was entitled to use as a standard of measurement for the damages during that period the average monthly earning of the said filling station for the preceding seven years is questionable, but under all of the facts and circumstances hereinbefore mentioned we have concluded that a decree in an amount of $2,500 to $3,500 would not have been excessive; and that the chancellor reached about as equitable conclusion as could have been reached in this case. No good purpose could be served in reversing and remanding the case for a new trial since a decree awarding reasonable compensation for the damages sustained on account of the breach of the contract would be based upon what the appellant would have been entitled to have reasonably expected to receive as profit under the new lease during such time as it was able to perform the contract on its part.

We have therefore concluded that the case should be affirmed both on direct and cross appeal.

Affirmed.

*Lee, Kyle, Gillespie* and *Rodgers, JJ.*, concur.