NEW SOUTH FEDERAL SAVINGS
BANK Plaintiff

v.

Charles D. ANDING, et al. Defendants

No. CIV.A. 3:02–CV–954 W.

United States District Court,
S.D. Mississippi,
Jackson Division.

Oct. 14, 2005.

638

Michael D. Simmons, Cosmich & Simmons, PLLC, Richard A. Brown, Cosmich & Simmons, PLLC, Jackson, MS, for New South Federal Savings Bank, Plaintiff.

Robert Charles Robb, Robb Law Offices, PLLC, Vicksburg, MS, for Charles D. Anding, Martha C. Anding, Larry Carson, Faye Carson, Ora Jean Dobson, William Kimbrough, Eddie Lee Jackson, Ernestine Jackson, Willie James, Jr., Linda James, George R. Kelly, Sr., Sandra G. Kelly, Herbert M. Rayburn, Louise Rayburn, Michael W. Rockenbach, Melinda K. Rockenbach, Denise Murphree, Phillip Temple, Suzanne Temple, Sarah Maxcy, Angelo Harris, Anna M. Gines, Margie M. Washington, James W. Maxey, Jr., James W. Gilmer, Katherine Gilmer, Troy Bond, Fran Bond, Defendants.

### MEMORANDUM OPINION AND ORDER

WINGATE, Chief Judge.

Before this court is the plaintiff's motion to compel arbitration. The plaintiff is New South Federal Savings Bank ("New South"), a federally chartered savings bank [1] with its principal place of busi-

1. Title 12 U.S.C. § 21 provides for the forma- tion of national banking associations, and

ness in Birmingham, Alabama. The defendants are all litigants in related state court proceedings before the Chancery Court for the First Judicial District of Hinds County, Mississippi. The complaint in the instant case asks this court to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), Title 9 U.S.C. § 4.[2] New South predicates this court's jurisdiction on Title 28 U.S.C. § 1332.[3] Inasmuch as New South is a federally chartered savings bank with its principal place of business in Birmingham, Alabama, and the defendants here are all residents of the State of Mississippi; and inasmuch as the amount in controversy exceeds the sum of $75,000.00, exclusive of costs and interests, this court has jurisdiction over this dispute under Title 28 U.S.C. § 1332.[4] Consequently, this court is obliged to apply the substantive law of the State of Mississippi to the instant case. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). For the reasons that follow, this court finds that the motion to compel arbitration is well taken and should be granted.

## PERTINENT FACTS

New South accepted assignments of the defendants' mortgage loans with a third party lender Southern Mortgage which had refinanced defendants' original home loans. Among the documents executed at the closing of each defendant's loan was a Deed of Trust Rider. The Deed of Trust Rider provides for arbitration of claims relating to the Promissory Note, the Deed of Trust and any other matters relating to defendants' home loan transactions. New South and defendants are the only parties to these Deed of Trust Riders.

After defendants stopped making payments under their promissory notes and the occurrence of other events, such as the

states that "[a]ssociations for carrying on the business of banking under title 62 of the Revised Statutes may be formed by any number of natural persons, not less in any case than five." They shall enter into articles of association, which shall specify in general terms the object for which the association is formed, and may contain any other provisions, not inconsistent with law, which the association may see fit to adopt for the regulation of its business and the conduct of its affairs. These articles shall be signed by the persons uniting to form the association, and a copy of them shall be forwarded to the Comptroller of the Currency, to be filed and preserved in his office.

**2.** Title 9 U.S.C. § 4 provides in pertinent part that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing

of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . ."

**3.** Title 28 U.S.C. § 1332(a) provides in pertinent part that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States; . . ."

**4.** A motion compelling arbitration pursuant to Title 9 U.S.C. § 4 does not confer subject matter jurisdiction on this court. An independent jurisdictional basis must exist. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). As set forth above, the bases for diversity of citizenship jurisdiction pursuant to Title 28 U.S.C. § 1332 are met in this action.

filing of state court claims against New South, New South filed a complaint in the United States District Court for the Southern District of Mississippi ("New South I"), seeking a declaratory judgment that (1) the defendants were required to submit their claims against New South to binding arbitration in accordance with the Deed of Trust Riders and pursuant to the Federal Arbitration Act, Title 9 U.S.C. §§ 1, et seq., or, in the alternative, (2) New South had no liability to the defendants under state or federal law. In its complaint, New South alleged that the district court had subject matter jurisdiction over the lawsuit solely on the basis of Title 28 U.S.C. § 1331, federal question jurisdiction. This lawsuit, ("New South I"), styled *New South Federal Savings Bank v. Denise Murphree, et al.*, Civil Action No. 3:01–cv–882LN, was assigned to the Honorable Tom S. Lee.

In response to New South I, the defendants filed a motion to dismiss in which they argued that the district court lacked federal question jurisdiction under Title 28 U.S.C. § 1331. Convinced that defendants had a point, Judge Lee dismissed that action *with prejudice* based on a lack of federal question jurisdiction.

Thereafter, New South appealed New South I to the United States Court of Appeals for the Fifth Circuit on the basis that the dismissal should have been without prejudice. Following briefing at the Fifth Circuit, that Court entered a *per curiam* opinion on December 20, 2002, which vacated the district court's dismissal of New South I with prejudice and remanded with instructions that the judgment be amended to reflect that the dismissal was without prejudice.

While the appeal of New South I was pending before the Fifth Circuit, New South filed the present action. In this present action, New South alleges, and this court agrees, that subject matter jurisdiction over this dispute is predicated under Title 28 U.S.C. § 1332. Thus, New South seeks to compel arbitration of the claims against it pursuant to the FAA.

The defendants previously moved to dismiss this action, asserting as grounds for a dismissal (a) that this court lacks subject matter jurisdiction by virtue of New South's failure to join parties whose presence in the case would destroy diversity of citizenship jurisdiction pursuant to Title 28 U.S.C. § 1332, (b) that the district court's judgment in New South I bars this action based on collateral estoppel, *res judicata*, and the law of the case, or, in the alternative, and (c) *Colorado River* abstention applies and that this court should defer to a parallel state court action. This court already has addressed these assertions in a separate Order and has denied the motion to dismiss (Docket No. 9–1). Only the motion to compel arbitration remains for disposition.

### *ARBITRATION—THE STANDARD*

■■■ Agreements to arbitrate are creatures of contract. Although there is a presumption in favor of arbitration, *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983), parties will not be required to arbitrate when they have not agreed to do so. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. University*, 489 U.S. 468, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488, 499 (1989). The courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties. The Federal Arbitration Act (FAA) "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Id.* 109 S.Ct. at 1255. This court is required to determine wheth-

er the parties agreed to arbitrate their disputes. *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir.2000). In this regard, the intent of the parties is determined by employing the state law rules of contract construction. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765. This presumption can be overcome with clear evidence that the parties did not intend the claim to be arbitrable. *Harvey*, 199 F.3d at 793.

■ A two-pronged inquiry is used when determining whether a motion to compel arbitration should be granted. The first prong has two components: (1) whether there is a valid arbitration agreement; and (2) whether the parties' dispute is within the scope of the arbitration agreement. *East Ford v. Taylor*, 826 So.2d 709, 713 (Miss.2002). The second prong asks "whether legal constraints external to the parties' agreement foreclose[s] arbitration of those claims." *Id.*, quoting *Mitsubishi Motors Corporation v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). This second prong includes the consideration of applicable contract defenses available under state contract law which may invalidate the arbitration agreement. *Id.*, citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

### THE ARBITRATION AGREEMENT

The arbitration agreement entered into between the parties is contained in a Deed of Trust Rider, a one-page document. This Deed of Trust Rider, a document separate and distinct from all the other loan documents signed by the defendants, was both initialed and signed by each defendant separately from all the other closing documents. Particularly, each defendant has initialed paragraph (a) of the document which provides as follows:

(a) For the purposes of the Note or this Deed of Trust, Borrower and Lender, acknowledge and agrees (sic) they are engaged in, and this Deed of Trust secures transactions involving substantial interstate commerce. Except as otherwise specifically set forth below, and **IN LIEU OF BORROWER'S AND LENDER'S RIGHT TO A JURY TRIAL AND THE RIGHT TO ASSERT A CLAIM FOR PUNITIVE DAMAGES, ATTORNEY FEES AND OTHER MATTERS MORE PARTICULARLY DESCRIBED HEREIN,** any action, dispute, claim, counterclaim or controversy ("Dispute" or "Disputes"), between Borrower and Lender, including any claim based on or arising from an alleged tort, shall be resolved in Jackson, Mississippi by **ARBITRATION** as set forth below. The term "Disputes" shall include all actions, disputes, claims, counterclaims or controversies arising in connection with the Note or this Deed of Trust, any collection of indebtedness owed to Lender, any security or collateral given to Lender, any action taken (or any omission to take any action) in connection with any of the above, any past, present and future agreement between or among Borrower and Lender (including the Deed of Trust), and any past, present or future transactions between or among Borrower and Lender. Without limiting the generality of the above, Disputes shall include actions commonly referred to as lender liability actions.

The Deed of Trust Rider further provides that arbitration shall be governed by the American Arbitration Association ("AAA") Commercial Rules. These rules provide for the payment of administrative fees by

the party bringing a claim or counterclaim.[5] New South filed its motion to compel arbitration under § 4 of the FAA. That section empowers parties aggrieved by another party's failure to arbitrate under a written agreement to file an original petition in a United States District Court to compel that party to arbitrate their claims. *See CitiFinancial, Inc., et al. v. Lipkin,* 143 F.Supp.2d 657 (N.D.Miss.2000).

Under the first prong of this court's analysis, this court finds that an agreement to arbitrate exists and that the dispute concerns a lender liability action, a matter clearly relegated by the parties to arbitration.

Moving to the second prong of this court's analysis, this court now shall determine whether there exist any legal constraints external to the parties' agreement which may foreclose arbitration of the defendant's claims against New South.

### DEFENDANTS' OBJECTIONS TO ARBITRATION

 In order to determine whether legal constraints exist which would preclude arbitration, "courts generally . . . apply ordinary state-law principles that govern the formation of contracts." *Bank One, N.A. v. Coates,* 125 F.Supp.2d 819, 827 (S.D.Miss.2001), quoting *Webb v. Investacorp, Inc.,* 89 F.3d 252, 257 (5th Cir. 1996); however, "[c]ourts may not . . . . . invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. at 687, 116 S.Ct. at 1655 (quoting *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct., 834, 843, 130 L.Ed.2d 753 (1995)); *Perry v.*

*Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987). In other words, the usual defenses to a contract such as fraud, unconscionability, duress, and lack of consideration may be applied to invalidate an arbitration agreement, so long as the law under which the provision is invalidated is applicable to contracts generally, and not only to arbitration provisions. *See East Ford, Inc. v. Taylor,* 826 So.2d 709, 714 (Miss.2002).

### A. Whether The Arbitration Provision is Illusory, not Supported by Consideration

The Deed of Trust Rider provides as follows:

(c) . . . Borrower agrees that Lender shall have the right, but not the obligation, to submit to and pursue in a court of law any claim against Borrower for a debt due. Borrower agrees that, if Lender pursues such a claim in a court of law, (1) Lender's failure to assert any additional claim such (sic) proceeding shall not be deemed a waiver of, or estoppel to pursue, such claim as a claim or counterclaim in arbitration as set forth above, and (2) the institution or maintenance of a judicial action hereunder shall not constitute a waiver of the right of any party to submit any other action, dispute, claim or controversy, as described above, even though arising out of the same transaction or occurrence, to binding arbitration as set forth herein. (d) No provision of, nor the exercise of any rights under this section, shall limit the Lender's right (1) to foreclose . . ., (2) to exercise self help . . . set-off . . ., or (3) to obtain . . . injunctive relief,

**5.** Rule 51 of the AAA's Commercial Rules, entitled Administrative Fees, states: "[a]s a not-for-profit organization, the AAA shall prescribe an initial filing fee and a case service fee to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be

applicable. The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. *The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees."*

attachment, or the appointment of a receiver ... before, during or after the pendency of any arbitration or referral....

The parties in the instant case have mutually agreed to arbitrate any action, dispute, claim, counterclaim or controversy ("Dispute" or "Disputes"), between Borrower and Lender, including any claim based on or arising from an alleged tort. The term "Disputes" includes all actions arising in connection with the Note and the Deed of Trust Rider, and actions commonly referred to as lender liability actions.

Defendants argue that the agreement to arbitrate is illusory because New South has reserved the right to pursue certain actions in court while the defendants must submit all their disputes to arbitration. The one-sidedness of this agreement, say defendants, lacks mutuality and is not supported by consideration. This, say defendants, renders the apparent agreement to arbitrate illusory.

 Mutuality of obligations is not required for a contract to be enforceable under Mississippi law. Accordingly, this court is not persuaded that the agreement to arbitrate contained in the Deed of Trust is deficient. *Clinton Serv. Co. v. Thornton*, 233 Miss. 1, 100 So.2d 863, 866 (1958). This court's view is influenced in part by the case of *Pridgen v. Green Tree Financial Servicing Corporation*, 88 F.Supp.2d 655 (S.D.Miss.2000), wherein the plaintiff Stacey Pridgen had financed the purchase of a mobile home. Her installment contract later was assigned to Green Tree Financial. Pridgen defaulted on her payments and Green Tree began efforts to collect the money due. *Id.* at 656. Pridgen filed suit against Green Tree alleging Green Tree had harassed and threatened her, causing her embarrassment and hu-

miliation. Green Tree moved to dismiss the suit and also to compel arbitration pursuant to the clause in the installment contract. *Id.* Pursuant to the arbitration agreement, the district court found: Green Tree, the "Assignee," reserved its right to seek judicial remedies on certain types of actions. At the same time, Green Tree preserved the right to compel arbitration as to any other claim, including any counterclaim that plaintiff may assert in any judicial action instituted by Green Tree. Therefore, Green Tree generally had an option of whether to sue in court, especially with certain types of claims, or to submit a claim to arbitration. Plaintiff, meanwhile, was bound to arbitration on any claim she may have brought on the contract. The court agreed that this was one-sided. *Id.* at 658. The court, however, further found that mutuality of obligation is not required under Mississippi law for a contract to be enforceable, as long as the underlying contract was supported by consideration. *Id.* at 659 (citing *Clinton Serv. Co. v. Thornton*, 233 Miss. 1, 100 So.2d 863, 866 (1958)). "Under Mississippi law, any mutual promises, such as mutual promises to arbitrate certain claims, constitute consideration. *See McKenzie Check Advance of Mississippi, LLC v. Hardy*, 866 So.2d 446, 452 (Miss.2004). Thus, an arbitration clause is not unenforceable solely because it is one-sided." *Id.See also First Family Financial Services, Inc. v. Fairley*, 173 F.Supp.2d 565, 572 (S.D.Miss.2001) (holding under Mississippi law that " 'mutuality of obligation is not required for a contract to be enforceable,' and an 'arbitration clause is not unenforceable solely because it is one-sided' "). Other mutual promises are present in the instant case, such as the parties' waiver of the right to jury trial, the right to claim punitive damages and the right to seek attorney fees.[6] All of these may

---

**6.** See the relevant portions of sub paragraphs (c) and (d) set out below.

serve a consideration for the agreement to arbitrate.

■ So, under Mississippi law, mutuality of obligation is not required for an arbitration agreement to be enforceable as long as there is consideration. *McKenzie Check Advance*, 866 So.2d at 452–53. Consequently, the defendants' argument that consideration is lacking in the instant case is wholly unsupported by the Mississippi authorities and the federal courts interpreting Mississippi law.

## B. Whether The Arbitration Provision is Unconscionable

The defendants next contend that the Deed of Trust Rider is unconscionable and unfair. The Mississippi courts recognize "two types of unconscionability, procedural and substantive." *Pridgen v. Green Tree*, 88 F.Supp.2d at 658–59, quoting *York v. Georgia–Pacific Corporation*, 585 F.Supp. 1265, 1278 (N.D.Miss.1984); *East Ford, Inc. v. Taylor*, 826 So.2d 709, 714 (Miss. 2002). Procedural unconscionability addresses the formation of the contract; substantive unconscionability focuses upon its actual terms.

### 1. Procedural Unconscionability

■ Procedural unconscionability is proved by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *East Ford*, 826 So.2d at 714. This court is not persuaded that defendants' proof shows such.

The defendants say that the heading of the Deed of Trust Rider gives no indication that it is an agreement to arbitrate, that the language of the agreement is sophisticated, and that New South's superior expertise with regard to financing transactions renders the arbitration clause unconscionable. The defendants also assert that

they were not instructed to read the Deed of Trust Rider prior to signing it.

■ The defendants admit, however, that they did not lack the ability to read and/or understand the agreement. They do not accuse New South of preventing them from carefully reading the agreement. *See Hicks v. Bridges*, 580 So.2d 743, 746 (Miss.1991) (person cannot avoid signed, written contract on grounds that he did not read it).

The defendants in the instant case initialed and signed the Deed of Trust Rider. Those acts under *Busching v. Griffin*, 542 So.2d 860 (Miss.1989), hurt their arguments. "To permit a party when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." *Id.* at 865.

Finally, the defendants herein cannot maintain that the arbitration agreement in the instant case was buried in fine print in the middle of a lengthy contract; but rather, the agreement was a separate document consisting of one page which was not difficult to read and ascertain that the document pertained to arbitration. The term "**ARBITRATION**" appears in bold capital letters, as does the phrase, "**IN LIEU OF BORROWER'S AND LENDER'S RIGHT TO A JURY TRIAL AND THE RIGHT TO ASSERT A CLAIM FOR PUNITIVE DAMAGES, ATTORNEY FEES, AND OTHER MATTERS MORE PARTICULARLY DESCRIBED HEREIN ....**" Thus, for the above reasons, this court discerns no procedural unconscionability in the instant arbitration agreement.

## 2. Substantive Unconscionability

 Substantive unconscionability must be proven by showing the terms of the arbitration agreement to be oppressive or unfair. *Smith v. EquiFirst Corporation*, 117 F.Supp.2d 557, 560 (S.D.Miss. 2000), citing *York*, 585 F.Supp. at 1278. If the arbitration clause, as written, would necessarily operate in such a way as to have an unconscionable effect, then it is unconscionable. *Id.* Substantively unconscionable clauses have been held to include matters such as excessive fees, waiver of choice of forum and waiver of certain remedies. *East Ford*, 826 So.2d at 714.[7]

 In *Entergy Mississippi, Inc. v. Burdette Gin Company*, 726 So.2d 1202 (Miss.1998), the Mississippi Supreme Court stated that unconscionability[8] was, "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." The Court stated that in order to show that a provision is conscionable, the party seeking to uphold the provision must show that the provision bears some reasonable relationship to the risks and needs of the business. *Id.*, 726 So.2d at 1207. Quoting *Terre Haute Cooperage v. Branscome*, 203 Miss. 493, 35 So.2d 537 (1948), the Mississippi Supreme Court colorfully defined an unconscionable contract as " '... one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other....' " *See also In re Will of Johnson*, 351 So.2d 1339, 1341 (Miss.1977).

 Of course, "[c]ontracts in which one party has minimal bargaining power, also referred to as contracts of adhesion, are not automatically void." *See Hughes Training, Inc. v. Cook*, 254 F.3d 588, 593 (5th Cir.2001) (emphasis added); and *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir.1992). Furthermore, arbitration agreements are not inherently unconscionable. *Bank One, N.A. v. Coates*, 125 F.Supp.2d 819, 830 (S.D.Miss.2001); *Smith v. EquiFirst Corporation*, 117 F.Supp.2d 557, 564 (S.D.Miss.2000).

In the instant case, the defendants contend that the Deed of Trust Rider is substantively unconscionable because it is one-sided. As noted previously, an arbitration clause is not unenforceable solely because it is one-sided. *Pridgen v. Green Tree*, 88 F.Supp.2d at 659. One-sidedness is a factor a court may consider in determining whether an arbitration clause is substantively unconscionable. *Id.* The defendants also base their claim of substantive unconscionability on the waiver of a jury trial, excessive fees, waiver of punitive damages and attorney fees, and the limitation of remedies under state law such as fraud, deceit, breach of contract, and conspiracy. Each is discussed below.

---

7. In *East Ford,* the Mississippi Supreme Court found an arbitration clause to be procedurally unconscionable where the arbitration provision appeared less than one-third the size of many other terms in the document in very fine print and regular type font, while all of the details concerning the vehicle purchased were in boldface print. The Court mentioned, but did not discuss, the plaintiff's lack of consideration argument, or the arguments of the parties regarding substantive unconscionability.

8. In *Sanderson Farms, Inc. v. Gatlin,* 848 So.2d 828, 844 (Miss.2003), the Mississippi Supreme Court applied the same characteristics to substantive unconscionability as it applied to unconscionability in general—absence of meaningful choice on the part of one of the parties; contract terms which are unreasonably favorable to the other party; unconscionability "at the time the contract was made; and the definition of an unconscionable contract set forth in *Terre Haute Cooperage v. Branscome,* 203 Miss. 493, 503, 35 So.2d 537, 541 (1948) (see below)."

#### a. Waiver of Jury Trial

■■■ Defendants contend that the arbitration clause waives a trial by jury and is substantively unconscionable on that basis, but a valid arbitration provision, which waives the right to resolve a dispute through litigation in a judicial forum, implicitly waives the attendant right to a jury trial. *Parkerson v. Smith*, 817 So.2d 529, 552 (Miss.2002), citing *Marsh v. First USA Bank, N.A.*, 103 F.Supp.2d 909, 921 (N.D.Tex.2000). The Seventh Amendment,[9] said the *Parkerson* court, does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes. *Id.,citing Cremin v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 957 F.Supp. 1460, 1471 (N.D.Ill.1997); and *Bosinger v. Phillips Plastics Corporation*, 57 F.Supp.2d 986 (S.D.Ca.1999) ("clear and unmistakable" standard not applicable to an individual's waiver of his or her own rights) citing *Wright v. Universal Maritime Service*, 525 U.S. 70, 119 S.Ct. 391, 396, 142 L.Ed.2d 361 (1998); and *Parsley v. Terminix International, Co.*, 1998 WL 1572764 (S.D.Ohio 1998) ("The 'loss of the right to a jury trial is a necessary and fairly obvious consequence of the agreement to arbitration' "). Moreover, "[i]f the claims are properly before an arbitral forum pursuant to an arbitration agreement, the trial right vanishes." *Bank One, N.A. v. Coates*, 125 F.Supp.2d 819, 835 (S.D.Miss.2001).

The result does not change under the Mississippi Constitution. The Mississippi Supreme Court has expressly stated that it "will respect the right of an individual . . .

to agree in advance of a dispute to arbitration." *IP Timberlands Operating Co. v. Denmiss Corporation*, 726 So.2d 96, 104 (Miss.1998).

#### b. Exorbitant Fees

Next, the defendants contend that they will be subjected to exorbitant fees if they pursue arbitration, effectively denying them a forum for presenting their claims. This is not necessarily so.

■■■ The Deed of Trust Rider states that it is governed by the American Arbitration Association ("AAA") Commercial Rules. As to the potentially burdensome costs of arbitration, the party resisting arbitration has the burden of showing the likelihood that "arbitration would be prohibitively expensive." *Green Tree Financial Corporation v. Randolph*, 531 U.S. 79, 81, 121 S.Ct. 513, 517, 148 L.Ed.2d 373 (2000).

■■■ Here, the defendants simply assert that they will be required to pay fees that they will not be able to afford. While the defendants say they have inquired about the amounts ordinarily charged by the AAA for arbitration costs, they have not shown that they have actually contacted the AAA and presented their respective financial statements showing that they cannot afford such fees and should be entitled to a deferment under Rule 51 of the AAA (see footnote 5). *See Parkerson v. Smith*, 817 So.2d 529, 544 (Miss.2002) (there is no indication that plaintiff ever made an effort to avail herself of the benefits of this provision in the Rules). The Fifth Circuit has made clear that the mere possibility that a party may have to share in the payment of the arbitrator's fees, without more, is not a sufficient reason to

---

**9.** The Seventh Amendment to the Constitution of the United States provides that, "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."

invalidate an arbitration agreement. *Williams v. Cigna Financial Advisors, Inc.*, 197 F.3d 752, 764–65 (5th Cir.1999).[10] In any event, as noted previously, the AAA's rules expressly allow for arbitration filing fees to be deferred or reduced in appropriate cases. Furthermore, the Fifth Circuit enforces arbitration provisions where the parties agree to arbitrate pursuant to the AAA's Commercial Arbitration rules, including cases where one party objects to the alleged high costs of arbitration. *See Personal Security and Safety Systems, Inc. v. Motorola, Inc.*, 297 F.3d 388, 396 (5th Cir.2002).

### c. Exclusion of Punitive Damages

The defendants next argue that the exclusion of the right to seek punitive damages under state law is unconscionable. Mississippi has yet to address this issue. Since this is a diversity case, this court is *Erie* bound, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to follow decisions of the Mississippi Supreme and Appellate Courts. When these Courts have not spoken on an issue, and the Fifth Circuit has spoken on that issue, this court is bound to follow the Fifth Circuit's interpretation of Mississippi law. If neither the Mississippi Courts nor the Fifth Circuit has spoken on an issue, then this court is required to make an "*Erie*—guess," not as to what this court, or some other federal court would do, but as to what the Mississippi Supreme Court would do if presented with these same issues. *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.) (en banc), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

The Mississippi Supreme Court and the Appellate Court have not addressed the matter of whether common law punitive damages may be excluded by an arbitration agreement. Yet, in a dissenting opinion delivered by the Honorable Associate Justice Kay B. Cobb of the Mississippi Supreme Court in the case of *Sanderson Farms, Inc. v. Gatlin*, 848 So.2d 828, 854 (Miss.2003), which did not involve a determination of the exclusion of punitive damages issue, Justice Cobb noted in passing that, "[p]unitive damages are awarded under notoriously open-ended legal standards and a broadly defined constitutional limit concerning the amount awarded." Private parties might well exclude common law punitive damages, with all their uncertainty, from the arbitrator's authority. Citing *Investment Partners, L.P., v. Glamour Shots Licensing, Inc.*, 298 F.3d 314, 316, 317–18 (5th Cir.2002), Justice Cobb explained that her view regarding common law punitive damages would not apply to cases involving statutory treble damages, or any other form of statutory exemplary or punitive damages under state or federal law. Justice Cobb further explained that "[t]reble damages (such as are provided under the antitrust laws), ..., represent a mere mathematical expansion of the actual damages calculated by the arbitrator," and that "riskiness of committing antitrust damages to the arbitrator is much smaller" than the risk the parties might run if the arbitrator had to determine punitive damages under the common law of Mississippi. *Sanderson Farms, Inc. v. Gatlin*, 848 So.2d at 854. Thus, concluded Justice Cobb, "[i]t is not obviously contrary to sound business sense that parties would seek to avoid the specter of punitive damages." *Id.* Of course, this instruction from Justice Cobb does not settle the matter since it arises from a dissenting opinion. Still, Justice Cobb's opinion points to the

---

**10.** In *Green Tree Financial Corporation–Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the United States Supreme Court rejected the Eleventh Circuit's conclusion that an arbitration agreement that is silent as to fees and costs is unenforceable because the plaintiff *"might* be required to bear substantial costs of the arbitration."

next step in this court's analysis of the matter—when the Fifth Circuit has spoken to the issue.

The United States Court of Appeals for the Third Circuit has rejected defendants' argument, finding that a contractual waiver of punitive damages is irrelevant to the issue of whether the plaintiff's claims should be arbitrated. *Great Western Mortgage Corporation v. Peacock,* 110 F.3d 222, 232 (3rd Cir.), *cert. denied,* 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997). According to *Peacock,* the issue should be whether the exclusion of punitive damages violates public policy, not whether the exclusion renders the arbitration agreement unenforceable.

Still, the Eleventh Circuit in *Paladino v. Avnet Computer Tech., Inc.,* 134 F.3d 1054, 1059–60 (11th Cir.1998), under similar circumstances to *Peacock,* refused to compel arbitration altogether, holding that the arbitration clause was unenforceable because it proscribed an arbitral award of Title VII remedies. This court notes that both these cases dealt with arbitration agreements which attempted to proscribe remedies provided by Congress pursuant to the ADEA and Title VII respectively, and not common law punitive damages.

In *Investment Partners, L.P. v. Glamour Shots Licensing, Inc.,* 298 F.3d 314 (5th Cir.2002), the arbitration agreement in question proscribed punitive damages generally. The United States Court of Appeals for the Fifth Circuit clarified that the questions presented on appeal were whether an arbitration clause that prevented the award of "punitive damages" generally also proscribed antitrust treble damages. If so, said the Fifth Circuit, then the Court would have to determine whether the entire arbitration clause was void as against public policy. The Fifth Circuit reviewed both the *Peacock* and *Paladino* decisions, then affirmed the district court's determination that statutory antitrust treble damages are not equivalent to "punitive damages." The arbitration clause was held enforceable, notwithstanding its general prohibition of punitive damages. The Fifth Circuit relied in part on *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), holding that treble damages provided by § 4 of the Clayton Act are remedial, not punitive and not precluded by a general proscription against punitive damages.

The defendants herein further contend that the prohibition of punitive damages in the Deed of Trust Rider is unconscionable because it precludes remedies afforded a putative plaintiff under federal statutes such as the Real Estate Settlement Procedures Act (RESPA), Title 12 U.S.C. § 2601;[11] under the Truth in Lending Act ("TILA"), Title 15 U.S.C. § 1640;[12] under

---

**11.** Title 12 U.S.C. § 2601(b) provides that, "[i]t is the purpose of this chapter to effect certain changes in the settlement process for residential real estate that will result -

> (1) in more effective advance disclosure to home buyers and sellers of settlement costs;
> (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;
> (3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and

> (4) in significant reform and modernization of local record-keeping of land title information."

**12.** Title 15 U.S.C. § 1640(a) provides that, "(a) [e]xcept as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of-

> (1) any actual damage sustained by such person as a result of the failure;

the Home Ownership and Equity Protection Act (HOEPA), Title 15 U.S.C. § 1641(d)(1); [13] and under the "Banking Acts."

Even if this were the intent of the exclusion, this is not an accurate statement of the current law. In *Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the United States Supreme Court held that federal statutory claims may be arbitrated under the FAA (Age Discrimination in Employment Act of 1967). The Court already had ruled in *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), that claims under the Securities Act of 1933 could be submitted to arbitration. *See Shearson/Amer. Exp., Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (claims under the Securities and Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act may be submitted to arbitration). In *Mitsubishi Motors*, 105 S.Ct. at 3346, 105 S.Ct. 3346, the Court allowed a claim under the Sherman Antitrust Act to be referred to arbitration, noting that, "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral forum rather than a judicial forum." So, the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *McMahon*, 107 S.Ct. at 2337.

In the case *sub judice*, the Deed of trust Rider does not specifically preclude arbitration of federal statutory rights as suggested by the defendants. Paragraph (f) simply states that the "abitrator(s) may not award punitive damages, treble damages, penalties or attorney fees ...." The presence of the term "treble" in relation to damages prompts the defendants to suggest that all statutory remedies are precluded from arbitration. This court does not agree. The United States Supreme Court's ruling in *Mitsubishi Motors* belies this contention. Further, even if a waiver of punitive damages or other statutory remedies contrary to public policy was intended by paragraph (f), such a provision is severable from an arbitration agreement. *Herrington v. Union Planters Bank, N.A.*, 113 F.Supp.2d 1026, 1033 (S.D.Miss.2000), *aff'd*, 265 F.3d 1059 (5th Cir.2001).

(2)(A) (i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000, or (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000; or

(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor; ..."

13. HOEPA subjects mortgage assignees to increased liability for HOEPA loans. Title 15 U.S.C. § 1641(d)(1). For HOEPA loans, liability is not limited to violations apparent on the face of loan documents, as detailed in section 1641(a), but rather liability exists unless the assignee proves that a reasonable person exercising ordinary due diligence could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements that the loan was a HOEPA loan, as detailed in section 1641(d)(1).

■ This court concludes that the prohibition of common law punitive damages contained in the instant Deed of Trust Rider, insofar as it applies only to preclude the parties from seeking common law punitive damages, is enforceable, and the parties must arbitrate.[14] For its conclusion, this court has relied on the Fifth Circuit's determination in *Investment Partners, L.P. v. Glamour Shots Licensing, Inc.*, and its affirmance of *Herrington v. Union Planters Bank, N.A.*

### d. Submitting Common Law Remedies to Arbitration

The defendants next argue that their common law remedies under state law such as fraud, deceit, breach of contract, and conspiracy would be limited if submitted to arbitration and such result would be unconscionable and against public policy. The Mississippi Supreme Court, the Mississippi Appellate Court and the Fifth Circuit have not yet addressed the this issue. Other jurisdictions addressing this issue have held that the adequacy of arbitration remedies has nothing to do with whether the parties agreed to arbitrate or if the claims are within the scope of that agreement. These types of challenges, say these courts, first must be considered by the arbitrator. *See Boomer v. AT & T Corporation*, 309 F.3d 404, 418 n. 18 (7th Cir.2002); *Bob Schultz Motors, Inc. v. Kawasaki Motors Corporation, U.S.A.*, 334 F.3d 721, 725–26 (8th Cir.2003); *Musnick v. King Motor Company of Fort Lauderdale*, 325 F.3d 1255, 1261 (11th Cir.2003); *Thompson v. Irwin Home Equity Corporation*, 300 F.3d 88, 92 (1st Cir.2002); and *Great Western Mortgage Corporation v. Peacock*, 110 F.3d 222, 230–31 (3d Cir. 1997) (cited above). *See also Jureczki v. Banc One Texas, N.A.*, 252 F.Supp.2d 368, 375 (S.D.Tex.2003) (permitting common law claims for fraud, conspiracy, negligent and fraudulent misrepresentation, breach of the duty of good faith and fair dealing, breach of contract, and conversion to proceed to arbitration since they arose from a single dispute); *Reed v. Bear, Stearns & Co., Inc.*, 698 F.Supp. 835, 837 (D.Kan. 1988) (submitting claims under state common law for breach of contract, breach of a fiduciary duty, fraud, negligence, and conversion to arbitration); and *Young v. Jim Walter Homes, Inc.*, 110 F.Supp.2d 1344, 1345 (M.D.Ala.2000) (claims for negligence, wantonness, fraud all properly submitted to arbitration).

■ Pursuant to *Erie*, this court concludes that the Mississippi Supreme Court

---

**14.** This court has considered New South's citation of *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), in support of its contention that the instant prohibition of punitive damages from arbitration is not unconscionable based on New South's interpretation of the case. In *Mastrobuono*, the parties incorporated an arbitration clause in their contract requiring the arbitration proceedings be conducted in accordance with the rules of the National Association of Securities Dealers. Those rules allow arbitrators to award punitive damages. However, the contract also contained a choice-of-law provision stating the agreement would be "governed by the laws of the state of New York." *Mastrobuono*, 115 S.Ct. at 1212. In New York, the power to award punitive damages is limited to judicial tribunals and is not within an arbitrator's authority. *Id.*, 115 S.Ct. at 1212. The United States Supreme Court recognized that "the choice-of-law clause introduced an ambiguity into the arbitration agreement that allowed punitive damages awards." *Id.* In an attempt to give effect to all of the provisions of the contract, the United States Supreme Court held that "the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators." *Id.* This court finds nothing in *Mastrobuono* which conflicts with this court's analysis of the punitive damages exclusion in the instant case.

would do the same if presented with this issue. Mississippi recognizes the existence of "a liberal federal policy favoring arbitration agreements." *McKenzie Check Advance of Mississippi, LLC v. Hardy*, 866 So.2d 446, 450 (Miss.2004), citing *Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987), and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Under Mississippi's policy, courts hesitate to disturb an agreement that knowledgeable and experienced parties freely have entered into. *Smith Barney, Inc. v. Henry*, 775 So.2d 722, 725–26 (Miss.2001). The Mississippi Supreme Court has noted that broad terms defining the scope of an arbitration agreement such as "any controversy" are "broad sweeping" and expansive enough to include most claims related to the contract in question. *Id.* The Deed of Trust Rider in the instant case provides that "any action, dispute, claim, counterclaim, or controversy between Borrower and Lender, . . ., shall be resolved by arbitration." This certainly appears broad enough to encompass the defendants' common law claims relating to their Borrower–Lender relationship with New South.

 Mississippi law also holds that a contracting party is under a legal obligation to read a contract before signing it. *See Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Company*, 584 So.2d 1254, 1257 (Miss. 1991). The defendants in the instant case have signed and initialed the Deed of Trust Rider and are presumed to have read and understood that their common law claims relating to their loans would be subject to arbitration.[15]

Finally, the Fifth Circuit in *National Iranian Oil Company v. Ashland Oil, Inc.*, 817 F.2d 326, 335 (5th Cir.), *cert. denied*, 484 U.S. 943, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987), stated that arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." In the instant case, all of defendants' claims are intertwined with the loans assigned to New South. To conclude that the defendants' common law claims of negligence, fraud and conspiracy lack any connection with the assigned loans simply defies reason.

### e. The Exclusion of the Remedy of Attorney Fees

 Absent some statutory authority or contractual provision, attorneys' fees cannot be awarded under Mississippi law unless punitive damages are also proper. *Mississippi Power & Light Co. v. Cook*, 832 So.2d 474, 486 (Miss.2002), citing *Aetna Casualty & Surety Company v. Steele*, 373 So.2d 797, 801 (Miss.1979). Inasmuch as the Deed of Trust Rider in the instant case prohibits either party from seeking punitive damages, it undercuts the foundation for claiming attorney fees. Moreover, the defendants point to no contractual or statutory foundation for their desire to claim attorney fees. Thus, after applying the principals of Mississippi law with regard to attorney fees, this court finds nothing unconscionable about their exclusion in the Deed of Trust Rider.[16]

---

15. Of course, not all state law claims are included in contact provisions stating that "any claim or controversy" shall be submitted to arbitration. *See Rogers v. Brown*, 986 F.Supp. 354, 360 (M.D.La.1997), holding that and employment contract's arbitration clause covered "any claims concerning (1) the termination of . . . employment or (2) sexual harassment," but did not cover the claims of defamation and battery.

16. New South has reserved the right to seek attorney fees under the terms of the Promissory Notes and the Deeds of Trust relating to the transactions in question for actions relating to foreclosure and power of sale. Inasmuch as the Deed of Trust Rider exempts

## CONCLUSION

Therefore, based on all the foregoing, this court finds the plaintiff's motion to compel arbitration of the defendant's claims to be well taken and the same is granted. The court hereby dismisses this case.

foreclosure actions from the arbitration agreement, this court finds no unconscionable impact from those reservations in the Promissory Notes and Deeds of Trust.